JENNIE NOVAK, APPELLEE, V. GEORGE REESON, APPELLANT.

FILED APRIL 21, 1923. No. 22332.

1. **Gifts:** GIFT OF NOTES IRREVOCABLE. Where a father, in making a loan of $4,000 to one of his sons, required said son to execute four notes in the sum of $1,000 each, payable to each of his four daughters, which said notes the father delivered to another son, with directions to hold said notes, collect the interest thereon and pay same to father during his lifetime, and at his death to deliver the notes to each of the daughters named therein, *held* a complete and irrevocable gift of the notes to the daughters.

2. ——: ——. Where a gift of notes is complete and irrevocable, the mere fact that the donor thereafter, without the knowledge or consent of the donee or holder, secured the notes from the possession of the holder and destroyed them, would not reinvest the title in the donor.

3. **Witnesses:** PRIVILEGED COMMUNICATIONS. Where an attorney is employed to draw a note which was subsequently destroyed, but is in no way consulted as to the legal effect of the instrument, he is not prevented by section 8835, Comp. St. 1922, from disclosing the terms and conditions of the destroyed note, or the statements made to him by his employer.

Novak v. Reeson.

APPEAL from the district court for Cuming county: ANSON A. WELCH, JUDGE. *Affirmed.*

A. R. Oleson, for appellant.

P. M. Moodie, contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

BEGLEY, District Judge.

Action brought by Jennie Novak against her brother, George Reeson, to collect the interest on a promissory note for $1,000 executed by her brother under the following circumstances:

In April, 1918, Samuel Reeson, an aged man, had $5,000 to his credit in the bank. He, having already provided for his sons, was desirous of giving $1,000 of this to each of his four daughters, namely, Jennie Novak, Martha Pospishel, Mary Baker, and Charlotte Hietzman, and to retain $1,000 for himself. However, his son George Reeson, desired to borrow $4,000 from his father for a period of three years. The father only desired to loan the money for one year. Finally he called to him his sons Walter and Charles and explained to them the situation and stated that he consented to let his son George have the $4,000 for three years; that in turn George was to sign four notes for $1,000 each in favor of each of his four daughters above named; that said notes were to be held by Walter, the interest collected and paid to the father during his lifetime, and at his death the notes were to be turned over to the daughters named therein. Thereafter, in accordance with this plan, Samuel Reeson went to D. W. Merrow, an attorney in Omaha, Nebraska, and had him draw up four notes in the sum of $1,000 each, payable to each of his four daughters, due in three years, with interest at the rate of 5 per cent. per annum, payable annually, and, together with a check for $4,000 payable to George Reeson, transmitted the same to his son Walter, with directions to turn over to George

Novak v. Reeson.

Reeson the $4,000 check upon his signing each of the four notes, and for Walter to hold the notes in accordance with previous directions. This was accordingly done, and the notes were duly signed by George and placed in the possession of Walter Reeson, who placed them in his box in the bank, which was entirely under his control and to which he had the only key, and they remained in such possession over three months. Later the father, Samuel Reeson, came to live with his son Walter and had some receipts and other papers in Walter's bank box, and, when requested to do so, Walter went with him to the box and opened it so that his father could look over his other papers. Then came a time in July, 1918, when the father wanted to look at some papers in the box. Walter was too busy to go with him, so he took the box home, gave his father the keys, and, without the knowledge or consent of Walter, the father took therefrom the four notes and burned them in the kitchen stove, stating to one daughter that he did so to save trouble after his death. Thereafter Walter discovered the loss of the notes, and the father stated he had destroyed them and admitted he had done wrong.

The father died September 23, 1918. George paid the interest due on the notes to Walter up until the time of the father's death. After her father's death Jennie Novak brought this action to recover the interest due upon the note made in her favor, and the trial court, at the close of the evidence, directed a verdict in favor of the plaintiff for the full amount of the interest claimed. From this verdict and judgment thereon defendant has appealed.

The main question argued by the appellant is that the evidence is insufficient to show the delivery of this note to the appellee, in that there was not a completed gift of the note and the same was canceled and destroyed by the donor during his lifetime while it was within his control, and, therefore, any previously intended gift thereof was revoked and annulled.

It may be conceded without argument that in all gifts a delivery of the thing given is essential to their validity and, if there be no delivery, the gift must fail. In order to effectuate delivery in this case the father must have delivered the note to his son Walter for the benefit of appellee, the payee therein eventually, and have expressed his intention to that effect, and also, at the time of such delivery to his son, the father must have parted with both the possession of the note and all dominion and control over it. The undisputed evidence shows the father caused these notes to be made out with the names of his daughters as payees, with the express purpose to give them the proceeds, except such interest as might accrue in his lifetime. In order to carry out this purpose he caused them to be delivered to his son Walter, who was to pay him the interest while he lived and at his death to turn the notes over to the several payees. Walter held them in his own exclusive possession in his bank box, to which he alone held the key. By this act the father made his son Walter the holder of the notes for the express purpose stated by him. He put the notes beyond his control, into the hands of his son, with express directions to carry out the trust. He did everything that could be done to carry out his plan of caring for himself during his lifetime with the income, assisting his son George with a loan, and also doing his duty by his daughters who had a claim on his bounty. This was a completed and irrevocable gift. In *Dinslage v. Stratman*, 105 Neb. 274, the question of delivery of a gift *inter vivos* is thoroughly discussed, various authorities cited and applied, and it was held that, where the proof is clear of an intention to make an absolute gift *inter vivos* of a chose in action arising from a debt not in writing, an unqualified direction by the donor to the debtor to pay the debt to the donee instead of to the creditor was a sufficient delivery of the gift, and the fact that actual enjoyment of the gift is to be deferred

until the donor's death does not render the gift either conditional, testamentary, or invalid.

The gift being completed and irrevocable, the mere fact that the donor thereafter, without the knowledge or consent of the trustee or the donee, secured the notes from the trustee's box and destroyed them did not reinvest the title in the donor. In *Brooks v. Brooks,* 105 Neb. 235, the father, who was the donor, obtained possession of an unrecorded deed, which had been delivered to his son and had been placed in a writing desk in the bedroom of the father, and burned it, saying that he wanted to make different arrangements. It was held that the title had passed by the deed. In *Svanda v. Svanda,* 86 Neb. 203, it was held that destruction by the grantor of a deed conveying real estate, after delivery and without the consent of the grantee, did not divest the grantee of the title. In *Brown v. Hartman,* 57 Neb. 341, it was held the destruction of a deed after its delivery did not divest the title of the grantee, even though the deed was surrendered by the grantee to the grantor.

The evidence affirmatively shows that before her father's death the appellee was informed by her father that Walter held the four notes and that after his death they became the property of the daughters. The daughter Charlotte also testified to a conversation wherein her father told her about the notes, referred to the destruction of them, and said that "George was as honest a boy as he ever had, and he said he would pay them without the notes— he would give them to us girls." The plan of withholding enjoyment of the money from the daughters during the lifetime of the father was planned to benefit the appellant, who desired the use of this money for three years. He was present at most of the conversations concerning the arrangement between the other sons and the father. He owes the money and agreed in the note to pay it to the appellee and this agreement is enforceable. *Tweeddale v. Tweeddale,* 116 Wis. 517.

Objection is made to the testimony of D. W. Merrow,

attorney who drew the notes, because communications had with him by Samuel Reeson are claimed to be privileged. Mr. Merrow testified as to the form and contents of the destroyed notes and as to the directions and statements made by Samuel Reeson at the time. He was not consulted as to the legal effect of the delivery of the notes and his evidence was not privileged. *Turner v. Warren*, 160 Pa. St. 336.

The trial court was right in directing a verdict, and the judgment is therefore

AFFIRMED.

MORRISSEY, C. J., dissenting.

From an examination of the record, I reach the conclusion that the father never intended to make, and did not make, such delivery of the notes as to divest him of their control and ownership.