IN RE ESTATE OF WILHELM KAMRATH.
CHARLES KAMRATH ET AL., APPELLEES V. MARY HODGES,
CLAIMANT, APPELLANT.

FILED DECEMBER 31, 1925. No. 23428.

Evidence examined and found insufficient to sustain the findings and
judgment of the district court.

APPEAL from the district court for Madison county: WIL-
LIAM V. ALLEN, JUDGE. *Reversed.*

*Vail & Flory* and *H. Halderson,* for appellant.

*William L. Dowling, Earl J. Moyer* and *Cloyde B. Ellis,*
contra.

Heard before MORRISSEY C. J., DEAN, DAY, GOOD, THOMP-
SON and EBERLY, JJ.

EBERLY, J.

This action was originally brought in the county court
of Madison county, Nebraska, by Fritz Kamrath and his
five brothers against George H. Gutru, executor of the es-
tate of Wilhelm Kamrath, and Mary Hodges, a sister of
the plaintiffs in this action. The petition in substance al-
leges that Wilhelm Kamrath had, on the 26th day of April,
1921, deposited in the Newman Grove State Bank, of which
George H. Gutru was president and managing officer, the
sum of $8,000, which sum, at the death of said deceased,
became part of his estate; that Mary Hodges and George
H. Gutru, for the purpose of defrauding plaintiffs, entered
into a conspiracy to alter and change the terms of the con-
tract of the deceased, and, pursuant to such fraudulent con-
spiracy, caused a new certificate to be issued purporting to
be payable April 26, 1927, to "Wilhelm Kamrath or Mary
Hodges," and prays that said sum be accounted for by the
executor as part of the estate of Wilhelm Kamrath, de-
ceased, and be distributed as such under the last will and
testament which had theretofore been admitted to probate.

To this petition Mary Hodges and Gutru filed answers,

each denying generally the allegations of the petition, and also pleaded affirmatively that said sum had been given by Wilhelm Kamrath in his lifetime to Mary Hodges. To these answers replies were filed.

A trial of these issues in the county court resulted in a judgment in favor of the plaintiffs. The defendant Mary Hodges appealed to the district court, where trial was had to the court, a jury being waived, which resulted adversely to the claims of the appellant. From an order of the district court overruling her motion for a new trial, she now appeals to this court.

The first question naturally presented in the determination of this case is, upon whom, in this matter, is imposed the burden of proof. It is to be noted that, notwithstanding the allegations of the answer filed herein are a general denial coupled with additional statements affirmative in form, yet, considered as an entirety, this pleading is nothing more in its effect than a denial of the allegations in the petition. *Peaks v. Lord,* 42 Neb. 15; *Gruenther v. Bank of Monroe,* 90 Neb. 280; *Perkins v. Brock,* 80 Cal. 320; *Miller v. Brigham,* 50 Cal. 615; *Griffith v. Continental Casualty Co.,* 290 Mo. 455; *Fajardo v. American Railroad Co.,* 27 Porto Rico, 559; *Staten Island M. R. Co. v. Hinchliffe,* 170 N. Y. 473.

Petitioners in their pleadings aver that the property in controversy was owned by and constitutes a part of the estate of Wilhelm Kamrath, and charge that the respondents were guilty of fraud in connection therewith by causing a new certificate to be issued since the death of Wilhelm Kamrath payable to the order of "himself or Mary Hodges." These allegations having been denied, the general rule would be that by the form of the issues the burden of proof was imposed upon the petitioners to sustain the allegations of their petition by a preponderance of the evidence. This is especially true where fraud is formed an issue by the pleading. "Fraud is never presumed, but must be clearly proved in order to entitle a party to relief on the ground that it has been practiced on him." *Davidson v. Crosby,* 49 Neb.

60.   See, also, *Clark & French v. Tennant,* 5 Neb. 549;
*Hampton v. Webster,* 56 Neb. 628; *Knapp v. Fisher,* 58
Neb. 651; *Watkins & Co. v. Kobiela,* 84 Neb. 422.   This
rule as to the burden of proof also applies to actions prose-
cuted by representatives of an estate to recover its assets.
So, too, "the general rule that the burden of proof is on the
one having the affirmative of an issue applies to actions in
respect to gifts." *Krull v. Arman,* 110 Neb. 70.

In construing the petition, we must keep in mind that—
"In pleading fraud it is necessary to set out the facts relied
upon for relief.   Mere epithets or conclusions of fraud,
without any statement of the facts upon which such charge
is predicated, are insufficient." *Crosby v. Ritchey,* 47 Neb.
924.

"Pleadings * * * are designed to apprise parties and
the court of the material facts on which the asserted
right depends, and to invoke attention to the points to
which testimony should be directed.   And as fraud is never
presumed, it is the rule that, where it is relied upon as a
ground of relief, the facts and circumstances constituting
the fraud must be stated in the bill with distinctness and
precision, so that an issue may be formed which will ap-
prise both parties of proof proper to be taken." 3 Elliott,
Evidence, sec. 2124.

Taking up the allegation charging the respondent Hodges,
in connection with Gutru, with fraud by fraudulently caus-
ing "a new certificate of deposit to be issued purporting to
be payable six years from April 26, 1921, and payable to
Mary Hodges or Wilhelm Kamrath, but your petitioners
aver that at the time of the issuance of said certificate the
said Wilhelm Kamrath was dead," there is no evidence in
the record which in any manner sustains this allegation.
The only competent evidence in the record is its absolute
refutation, and this conclusion is in a measure born out by
the contention of the plaintiff that certificate No. 9272 for
$8,000 in evidence discloses that the maturity date has been
altered.   It is inconceivable that a man should forge a cer-
tificate and then thereafter alter the date of the forgery.
And then, too, it appears that, not only does certificate No.

9272 appear to have a maturity date 72 months after date of issue, but the same is true of two other certificates issued by the Newman Grove State Bank to Wilhelm Kamrath in which Mary Hodges could have no possible interest or connection.

Plaintiffs' evidence summarized would be as follows: Fritz Kamrath, party in interest, testified that some 40 days after Wilhelm Kamrath's death, he and Charles Kamrath, his brother, together with two appraisers appointed to appraise the estate, Olson and Weyant, examined the contents of the depository box of the deceased then at the Newman Grove State Bank. Therein was found two certificates of $8,000 each payable to the order of Wilhelm Kamrath, and one for $3,500 payable to the order of Wilhelm Kamrath or Mary Hodges, all due 12 months after date. This evidence stands practically alone. Charles Kamrath and Weyant were not sworn, and Olson testified that in making the examination he read only the amounts named in the certificates and could not state the rate of interest, to whom or when payable, except that he has a recollection that at that time there was a statement made by some one present that the $3,500 certificate of deposit was payable to Wilhelm Kamrath or Mary Hodges. Fritz Kamrath further testified that shortly after the first examination a second examination was had of the contents of this depository box, at which time it was discovered that all certificates were payable 72 months after date; that certificate No. 9272 for $8,000, being the one in controversy in this action, was then payable to Wilhelm Kamrath or Mary Hodges, and that certificate No. 9273 for $3,500 was then payable to Wilhelm Kamrath only.

It appears from the record that in the inventory returned by the appraisers it was noted that certificate No. 9272 for $8,000 was payable to the order of "Wilhelm Kamrath or Mary Hodges." This original certificate No. 9272 payable to the order of "himself (Wilhelm Kamrath) or Mary Hodges" is before the court, and as to number, date, amount, and payee, it appears regular on its face. There is no founda-

tion in the record to support an inference of substitution or duplication. Original certificate No. 9273 for $3,500 is not before us. If plaintiffs' evidence is correct this instrument must on its face bear evidence of spoliation, for if originally issued payable to "himself or Mary Hodges" the removal of the words "or Mary Hodges" from the face of this certificate would leave indisputable traces of alteration. But the record does show that certificate No. 9273 for $3,500 was introduced in evidence in county court, though not produced in district court, and so far as disclosed by the record before us, which purports to be a transcript of the testimony produced in county court, certificate No. 9273 was fair and regular on its face, and as a whole the evidence in the county court supports the inference that this certificate when introduced in evidence was found to be payable to the order of Wilhelm Kamrath only, and not to "himself or Mary Hodges." George H. Gutru testified that original certificate No. 9272 for $8,000, which is in evidence, was the original certificate as issued; that it, together with the other certificates, was issued in the exact form in which it now appears, viz., certificate No. 9272 was payable to the order of "himself (Wilhelm Kamrath) or Mary Hodges" 72 months after date. This witness is corroborated by the bank records including voided blanks for certificates of deposit Nos. 9270 and 9271.

The evidence of Will Hodges and his daughter, Paulina Hodges, is to the effect that Wilhelm Kamrath in his lifetime, and probably on the day of its issuance, manually delivered certificate No. 9272 for $8,000 to Mary Hodges as a gift at her home, and that Mary Hodges had possession of it as owner. This occurred more than four months prior to the examination of the depository box above referred to. In view of this evidence we find that, even if the "substance of the issue" as set forth in the pleading can be construed as extending to or embracing the subject of alteration of the original certificates, certificate No. 9272 for $8,000 payable to the order of "himself or Mary Hodges," bearing date of April 26, 1921, as to payee, date, number, and

amount, is the certificate originally issued by the Newman Grove State Bank, and that the petitioners (plaintiffs) have wholly failed to sustain the charge of fraud as set forth in their petition.

The next question presented by the record is: Did Wilhelm Kamrath execute the gift of certificate No. 9272 for $8,000 to his daughter, Mary Hodges? In the determination of this question it is to be remembered that the situation, relation, and circumstances of the parties, and of the subject of the gift, as well as the donor's motives, reasons and inducements for making the alleged gift are all proper to consider in the determination of the probability that the gift was, in fact, made. This intent and purpose to make a gift to his daughter, Mary Hodges, is disclosed in the provision of the will, executed September 25, 1907, whereby there was devised to the six petitioners and Mary Hodges "to be divided among them equally, share and share alike, all property both real and personal of which I may die possessed." Also it is evidenced by the facts that subsequent to the date of the execution of the will he deeded to each son a farm, announcing his purpose to provide for Mary Hodges in a manner that would equalize her situation with her brothers, and his attempt to pay off the mortgage on her land. The transaction in the Newman Grove State Bank on April 26, 1921, in the presence of Mary Hodges, which finally culminated in the issuance of certificate No. 9272, payable to "himself or Mary Hodges," not only discloses an undisputed intention by the deceased to then make this gift of $8,000, evidenced by the certificate, but it is indeed a serious question whether or not the transaction in the bank on April 26, 1921, was not, in effect, an executed gift which resulted in the vesting of the title to the $8,000, represented by the certificate, in Mary Hodges. *Smith v. Haire*, 133 Tenn. 343. At least, when, thereafter, on or about the same day of its issuance, certificate No. 9272 was by said deceased manually delivered to and accepted by Mary Hodges as a gift, all doubt as to the result of the transaction must be deemed removed, the certificate

being in terms payable to "himself or Mary Hodges." The delivery of the certificate to Mary Hodges with the intention of making a gift of the deposit thereby represented, to a party to whom the certificate was then payable, operated as a gift of the fund itself. *Foster v. Murphy*, 76 Neb. 576. As between Wilhelm Kamrath and Mary Hodges as well as the world it was not necessary for Kamrath to indorse the certificate of deposit, it being payable to "himself or Mary Hodges." Either party was authorized to negotiate and transfer the same by his own indorsement. Comp. St. 1922, sec. 4619; *Voris v. Schoonover*, 91 Kan. 530, 50 L. R. A. n. s. 1097; *Page v. Ford*, 65 Or. 450, 45 L. R. A. n. s. 247. Nor did the reservation of the interest by Wilhelm Kamrath prevent the consummation of the gift and the vesting of the title in the donee. *Dinslage v. Stratman*, 105 Neb. 274; *Bone v. Holmes*, 195 Mass. 495. So, too, it cannot be said that, because certificate No. 9272 was found after the death of Wilhelm Kamrath in the safety deposit box owned by him, it necessarily negatived the right of Mary Hodges to the principal sum evidenced thereby. The gift had been fully executed and the title vested before the death of Kamrath. The terms of the gift imported the right in him to collect the interest thereon, which fact made his possession of the certificate wholly consistent with the title of the principal as being in Mary Hodges. In other words, the evidence disclosing that the gift at one time was fully executed and title vested pursuant thereto establishes the existence of a fact the continuance of which is presumed until evidence is present inconsistent therewith. In a case similar in principle the supreme court of Massachusetts held as follows: "An owner of a bond executed a formal assignment of it, and delivered the bond and assignment to the assignee, when it was put in the owner's safety deposit box for safe-keeping, marked as the property of the assignee, who thereafter took the bond from the box and kept it in her own box for a while, when it was returned to the owner's box, where it remained until the latter's death. Held, that there was a sufficient delivery with in-

tent to pass title to constitute a valid gift of the bond *inter vivos.*" *Bone v. Holmes,* 81 N. E. 290 (195 Mass. 495). See, also, *In re Estate of Landon,* 98 Neb. 706; *Scrivens v. North Easton Savings Bank,* 166 Mass. 255; 28 C. J. 642, sec. 36; *Danley v. Rector,* 10 Ark. 211, 50 Am. Dec. 243; *Pirie v. Le Saulnier,* 161 Wis. 503; *Will of Klehr,* 147 Wis. 653; *McNally v. McAndrew,* 98 Wis. 62; *Davis v. Ney,* 125 Mass. 590, 28 Am. Rep. 272; *Meriwether v. Morrison,* 78 Ky. 572; *Ruiz v. Dow,* 113 Cal. 490; *Lord v. New York Life Ins. Co.,* 95 Tex. 216, 93 Am. St. Rep. 827.

It may be said, *arguendo,* that giving the testimony of the plaintiffs the force and effect of admitted facts, it does not necessarily negative the testimony of the defendant as to the occurrence of the gift, except to establish the fact that at the time of the delivery of certificate No. 9272 by Wilhelm Kamrath to Mary Hodges it was payable to his order and had not been indorsed by him. But indorsement of the certificate was not necessary to vest the right of property therein as of date of delivery in the donee. *Greeley State Bank v. Line,* 50 Neb. 434; *Cather v. Damerell,* 5 Neb. (Unof.) 175; *Fagan v. Troutman,* 24 Colo. App. 473; *Bertolet v. Stoner,* 164 Ill. App. 605; *Nelson v. Olson,* 108 Minn. 109.

If it be further assumed that between the first and second examinations of the contents of the depository box (both of which were made after the death of Wilhelm Kamrath) certificate No. 9272 had been altered by changing "12 months" to "72 months" and adding the words "or Mary Hodges" to the designation of the payee previously therein contained, there being no evidence connecting Mary Hodges with the alteration, the act would amount to spoliation merely and would be wholly ineffective to in any manner change, impair, or alter the rights of the real owner of the instrument. The original certificate may still be enforced so long as its original character is susceptible to proof and the rights of the parties thereto are not in any manner affected by the apparent alteration thereof. *Bingham v. Shadle,* 45 Neb. 82; 28 C. J. 642, sec. 36.

The evidence is insufficient to support the findings and judgment of the district court. The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.