IN RE ESTATE OF WILLIAM LINSLEY DAYTON.
ANN MEDUNA, APPELLEE, v. ESTATE OF WILLIAM LINSLEY DAYTON ET AL., APPELLANTS.

FILED JUNE 18, 1931. No. 27797.

C. C. *Flansburg,* for appellants.

*Sterling F. Mutz, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, and DAY, JJ.

DEAN, J.

Dr. William Linsley Dayton, for many years a resident of Lincoln, died testate February 28, 1930, leaving an estate of upwards of $100,000 in value. A son, Frank T. Dayton, and a daughter, Mary Helen Dayton, the defendants herein, are the joint executors of the Dayton estate. Ann Meduna, the plaintiff herein, began this action in the district court for Lancaster county to establish ownership in and to 10 Nebraska state fair bonds in the sum of $1,000 each, and for an order requiring the defendants to relinquish to her the possession of the above bonds. The bonds were registered under date of July 2, 1929, in the plaintiff's name. The contention of the defendants, however, is that the delivery of the bonds to the plaintiff was incomplete and that they are a part of the decedent's estate and should be administered as such.

The trial court found that the bonds were purchased by the decedent and that delivery of the bonds to the plaintiff was fully completed during the lifetime of the decedent. The court also found that the decedent kept the bonds in his safety-deposit box to enable him to collect the interest thereon and that the plaintiff is entitled to the possession

of the bonds and also of the interest accruing thereon subsequent to the death of the decedent. The defendants have appealed.

In his practice, Dr. Dayton was a specialist in the treatment of diseases of the ear, eye, nose and throat, and, as his assistant and nurse, the plaintiff was in his employ for almost 14 years. The salesman, from whom the doctor purchased the bonds in suit, testified that the bonds were registered shortly thereafter in the plaintiff's name.

A witness testified that she had been acquainted with the decedent and his family for many years and that she has also been acquainted with the plaintiff for many years. This witness testified that the decedent told her about the bonds in suit and that he had purchased and registered them in the plaintiff's name. She also testified that the doctor informed her that he purchased the bonds as a gift to plaintiff in recognition of her long and faithful service as his assistant.

Another witness, also a long time acquaintance of the Dayton family, testified that the doctor, in the course of a conversation with her, informed her that he had remembered the plaintiff's services in a former will, but that he was not satisfied with the provision he had made therein in her behalf, and that the bonds were therefore purchased and presented to her instead. And this witness also testified that the doctor informed her that when he died he did not want any trouble over his property. She also testified that Dr. Dayton then, in view of the foregoing, obtained a promise from her that, in event trouble did arise over his estate, she would relate the circumstance of this gift to the end that the plaintiff would receive the bonds intended for her.

And another witness testified that Dr. Dayton talked with the witness in respect of a one time prospective purchase of certain land owned by the witness. Dr. Dayton then informed the witness that he did not care to purchase land for himself, but that he would consider purchasing

some for the plaintiff. It may be noted, however, that the sale of the land was never consummated. This witness also testified that, in the course of their conversation, the doctor informed her that the plaintiff "took nearly full charge of his office, and many of his personal affairs."

Certain physicians who were professionally associated with Dr. Dayton testified that he informed them that it was his intention that the plaintiff was to be amply repaid by him for services she had performed in his practice and in his private affairs. Another witness testified that the doctor told him that he desired "to do something for Ann (the plaintiff) but didn't want to leave it in his will." He also testified that he was informed by the doctor that it was for this reason that the bonds were registered in the plaintiff's name. From the evidence it appears that the plaintiff at one time accompanied Dr. and Mrs. Dayton to Michigan, apparently as a nurse, when Mrs. Dayton was ill, and that she assisted in caring for the doctor's wife without remuneration other than the payment of her fare. And from certain correspondence between the decedent and the plaintiff, it is apparent that the plaintiff had charge of the rental of property belonging to her employer.

There is a receipt in the record which the plaintiff testified was delivered to her by Dr. Dayton after he had purchased the bonds. This receipt acknowledges the purchase of the 10 state fair bonds in the sum of $1,000 each, and bears the pencilled notation: "Nos. 136 to 145 inclusive registered in name Ann Meduna." In *Kaufmann v. Parmele,* 99 Neb. 622, this statement appears:

"In an action for conversion, proof of facts showing that the owner of bonds deposited with defendant for safekeeping delivered the receipt therefor to plaintiff with the intention of making a gift thereof may establish plaintiff's title thereto, though the receipt was transferred without indorsement or assignment."

From a resume of the evidence it appears that it was the intent of the decedent that the 10 bonds in suit should be

the sole property of the plaintiff. It does not appear that the plaintiff at any time exercised undue influence over the decedent, nor has such fact been pleaded or proved.

In *Dinslage v. Stratman*, 105 Neb. 274, we held: "The mere fact that actual enjoyment of the gift by the donee is, by the declaration of the gift, postponed until the death of the donor, does not render the gift either conditional or testamentary, or in any way invalid. In such a case, the stipulation that actual enjoyment of the gift is to be deferred until the donor's death only marks the time when enjoyment begins, and is not a condition, since the donor's death is inevitable." And in *Tyrrell v. Judson*, 112 Neb. 393, we said: "A person having property may give the same in his lifetime directly to the donee, or by any suitable declaration to a third person for the use of the donee, authorizing such person to make delivery of the subject of the gift after the donor's death." And we have likewise held: "The mere reservation of interest to the donor during his lifetime does not invalidate the gift." *In re Estate of Sides*, 119 Neb. 314. See *Novak v. Reeson*, 110 Neb. 229. In the present case, where 10 Nebraska state fair bonds, in the sum of $1,000 each, were registered by Dr. Dayton in the name of the plaintiff, when purchased, but such bonds were kept in the safety-deposit box of the decedent for his convenience in collecting accruing interest thereon so long as he lived, we think that a complete delivery of such bonds to the plaintiff was thereby effected. And the delivery of the bonds may be established by the declaration of the decedent that such bonds were a gift to the plaintiff.

There does not appear to have been any attempt on the part of the decedent to conceal the transfer of the bonds to the plaintiff. And, in view of the fact that both of the defendants are abundantly provided for under the terms of their father's will, we hold with the learned trial court that the presentation of the bonds in suit to the plaintiff should not at all be disturbed. But, under the circumstances disclosed by the record, even if the donor had not

left a substantial estate to his son and daughter, it does not appear to us that the defendants would have been justified in an attempt to prevent the disposition of the bonds as desired by the decedent.

The judgment is right and it is therefore in all things AFFIRMED.