PEDER ANDERSEN, APPELLEE, v. E. H. LUIKART, RECEIVER OF THE UPLAND BANKING COMPANY ET AL., APPELLANT: CHRISTOPHER WORK ET AL., APPELLEES.

FILED JUNE 1, 1934. No. 28984.

*Leon Samuelson, P. E. Boslaugh, Edmund P. Nuss, F. C. Radke* and *William Gartland,* for appellant.

*Thomas Robertson* and *J. S. Gilham, contra.*

Heard before ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LESLIE and RYAN, District Judges.

GOOD, J.

This is an action to foreclose a real estate mortgage. The mortgagors made no appearance, and decree was entered against them by default. Luikart, as receiver for the Upland Banking Company and receiver for the People's Bank of Upland, filed cross-petitions, seeking foreclosure of two mortgages. One of the mortgages was for $5,990, in which the Upland Banking Company was named as mortgagee; the other for $1,900, in which the People's Bank of Upland was named as mortgagee.

In his cross-petitions as receiver, Luikart charges that the principal of plaintiff's mortgage had been extinguished or canceled by a release executed by plaintiff and intended as a gift to the mortgagors. The trial court entered decree for plaintiff, awarding him a first lien; Luikart, as receiver for the Upland Banking Company, a second lien; and Luikart, as receiver for the People's Bank of Upland, a third lien. Luikart, in his capacity as receiver for the two insolvent banks, has appealed. The only question is whether or not plaintiff had canceled his mortgage by making a gift to the mortgagors.

Bertha Work, wife of Christopher Work, is a daughter of plaintiff. Christopher Work owns a farm of 160 acres in Franklin county, Nebraska. Plaintiff had formerly lived in Franklin county and had done business with the Upland Banking Company. In 1914 Work and wife executed and delivered to plaintiff their promissory note for $7,000, due in 10 years, with interest at 5 per cent., payable semiannually, which was represented by 20 coupons

attached to the note. To secure the payment of this note, they executed a mortgage on the farm. That is the mortgage which plaintiff seeks to foreclose. Mortgagors had paid the interest and $1,500 on the principal of the mortgage prior to 1921. In that year plaintiff planned a visit to Denmark, and came from his then home in California to Upland, Nebraska, and arranged with his son-in-law, Work, to pay an additional $500 upon the principal of the 7,000-dollar note. At that time he informed the officers of the Upland Banking Company of his intended trip to Denmark and that he wanted to fix up some paper so that, if anything happened to him, the mortgage and note would go to his daughter, Mrs. Work. The bank officers conferred and prepared a release of the mortgage which contains this provision: "This release is only to be used upon the death of Peder Andersen and is to be left with the Upland Banking Co. in escrow till that time."

It does not appear that Mrs. Work had any knowledge or information at that time of her father's intention to give her the note and mortgage "if anything happened to him," by which he undoubtedly meant in the event of his death, and did not have any knowledge of it for a long time thereafter. Plaintiff was away on his trip abroad for several months, and when he returned he did not, for a long time, ask for the release. In 1925, and after the maturity of the original 7,000-dollar note and mortgage, plaintiff arranged with his son-in-law and daughter for an extension of the unpaid portion of the mortgage. An extension agreement was executed by them, extending the time of payment upon the $5,000 remaining of the principal until 1929, and this extension agreement had attached thereto interest coupons representing interest payments. Some years subsequently the Upland Banking Company loaned Work $5,990 and took a mortgage upon the same land. The officials of this bank knew of the release and that it was in the possession of the bank, together with plaintiff's other papers, including the note

and mortgage. The officers of this bank also knew of the extension agreement and had prepared such agreement for the plaintiff and the mortgagors. One of the former officers of that institution testified that at the time they considered the farm ample security for both the mortgage to plaintiff and the mortgage to the bank. Subsequent to this time the People's Bank of Upland loaned money to Work and took a third mortgage upon the same land for $1,900. So far as appears in the record, none of the officers of this bank at that time had any knowledge or information concerning the release which had been executed by plaintiff. Subsequent to this time Work had made default in paying the taxes upon the farm, and plaintiff asked for a return to him by the bank of the note, mortgage and release. The bank was then in the hands of a receiver. The receiver refused to comply with this request, insisting that the release was held in escrow and could not be surrendered to plaintiff. Thereupon, plaintiff instituted this action in foreclosure, with the result above indicated.

Counsel for cross-petitioner concedes that there is but one question for this court to determine, viz.: Did plaintiff, by the execution of the release in 1921, execute a gift *inter vivos* of the indebtedness owing to him by defendants Christopher and Bertha Work?

Cross-petitioner contends that a person may make a gift of a debt or chose in action and may reserve to himself a life estate or income therefrom for life, and that such a gift is not invalid for lack of consideration, because of a reservation of an interest therein for life, or because it is not to take effect until after his death; and further contends that in such case a stipulation that actual enjoyment of the gift is to be deferred until the donor's death only marks the time when the enjoyment begins and is not a condition, since donor's death is inevitable. Cross-petitioner also contends that, where the gift of a note is complete and irrevocable, the mere fact that the donor thereafter, without the knowledge or con-

sent of the donee, secures the note from the possession of the holder does not reinvest the title in the donor. He cites and relies upon a number of decisions made by this court, among them *Dinslage v. Stratman,* 105 Neb. 274; *Novak v. Reeson,* 110 Neb. 229; *In re Estate of Kamrath,* 114 Neb. 230; *In re Estate of Sides,* 119 Neb. 314; and *In re Estate of Dayton,* 121 Neb. 402. We think, for the sake of the argument, it may be conceded that the propositions contended for by cross-petitioner are sound, but an examination of the cases cited shows that the facts in those cases are quite dissimilar to the facts in the instant case.

In *Dinslage v. Stratman, supra,* it was held: "Where the proof is clear of an intention to make an absolute gift *inter vivos* of a chose in action, arising from a debt not evidenced by a promissory note or other document, an unqualified direction by the donor to the debtor to pay the debt to the donee, instead of to the creditor, is a sufficient delivery of the gift, it being the only delivery of which the chose is susceptible." In that case there was clear and convincing evidence of the purpose and intent of the donor to make an absolute gift *inter vivos.*

*Novak v. Reeson, supra,* was a case where a father made a loan of $4,000 to one of his sons and required the son to execute four notes in the sum of $1,000 each, payable to each of the father's four daughters, which notes the father delivered to another son, with directions to hold said notes, collect the interest thereon and pay the same to him during his lifetime, and after his death to deliver the notes, one to each of the daughters named therein, and it was held that this was a complete and irrevocable gift of the notes to the daughters.

In *In re Estate of Kamrath, supra,* the question was whether the name of a payee in a certificate of deposit had been altered from Wilhelm Kamrath to Wilhelm Kamrath or Mary Hodges. We think that case has no bearing upon the question here involved.

In the case of *In re Estate of Sides, supra,* it was held that the mere reservation of interest to the donor during his lifetime does not invalidate a gift. In that case a father, in his lifetime, gave money to each of his children by a former marriage and took from each a promissory note for the full amount of money so given, made payable to himself and bearing interest at the rate of 4 per cent. per annum, but containing a written provision that such note should be canceled on the death of the payee and should not be against the maker. In that case the father, during his lifetime, delivered the notes to a third person in trust, with directions to him to collect and remit to the payee the interest on the notes during his lifetime, and upon his death to surrender the notes to the makers, and thereafter never exercised dominion or control over the notes. It was there held that there was a complete gift *inter vivos.*

In *In re Estate of Dayton, supra,* Dayton, in his lifetime, purchased bonds and had them registered in the name of the donee and kept them in his safe deposit box for convenience in collecting accruing interest thereon so long as he lived, but the evidence in that case was clear and convincing that he had purchased the bonds for the donee and had made a gift of them to her, but reserving to himself the interest or income from the bonds during his lifetime.

To constitute a valid gift *inter vivos,* dominion over and title to the gift must pass to donee by the voluntary, intentional act of donor.

In the instant case there is no gift, nor language showing a present intention to make a gift, by the plaintiff to his daughter. He did not communicate to her the fact that he had executed a release. He did not deliver the note or mortgage to her, but kept them in his possession and gave no direction to any one to deliver the note and mortgage to her. The release was executed evidently with the thought in his mind that he might not live to return from his trip to Denmark, and, in that event, the release

should operate. We think the evidence falls far short of being convincing that there was any intention on the part of plaintiff to make a gift to his daughter. Moreover, long after this release was executed the daughter and her husband executed an extension agreement of the mortgage and note, recognizing their full liability for $5,000 and interest thereon. Neither the daughter nor her husband is, in this case, claiming there was any gift, and their testimony taken negatives the idea of any gift.

It is true that in the release it is denominated an instrument in escrow, but there was no agreement between plaintiff and his daughter or his son-in-law that the instrument should be left in the bank as an escrow. We are convinced that the bank was merely the custodian of plaintiff's papers, including the note, mortgage and release, and that plaintiff was entitled to demand possession of them at any time. They were not beyond his control, and there was no intention on his part to part with their control.

The decree of the district court is free from error, and it is accordingly

AFFIRMED.