ETHEL L. STINTON JONES, EXECUTRIX, APPELLANT, V.
CLYDE K. EWART ET AL., APPELLEES.
10 N. W. (2d) 708

FILED JULY 30, 1943. No. 31541.

*John C. Gewacke, R. B. Waring* and *Guy A. Hamilton*, for appellant.

*Sloans, Keenan & Corbitt* and *Walter C. Weiss, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL and WENKE, JJ., and LIGHTNER, District Judge.

LIGHTNER, District Judge.

This controversy arises by reason of a provision in a deed by Charles and Emma L. Stinton to their son-in-law and daughter, Clyde K. Ewart and Vallia F. Ewart, which among other considerations requires the grantees to pay $10,000 to three other children of the Stintons a year after the death of the survivor of the Stintons. An attempt was made later by the Stintons and Ewarts to cancel this $10,-000 provision by an amendment to the deed. The claim of certain of the defendants is that the $10,000 provision amounted to a completed gift *inter vivos* which could not be canceled while plaintiff and other of the defendants claim that it was not a completed gift. The district court found that the $10,000 provision amounted to a completed gift *inter vivos* and plaintiff and part of the defendants appeal.

It is necessary in order to give an understanding of the matter that a much more detailed statement be made of the facts. They are not in serious dispute and are as follows: On and prior to April 19, 1922, Charles Stinton and Emma L. Stinton, as husband and wife, were the owners as tenants in common of a 160-acre farm in Fillmore county, Nebraska. The Stintons were parents of the following children, to wit: Vern L. Stinton, son; Ethel L. Stinton, now

known as Ethel L. Stinton Jones, daughter; Elva A. Archer, daughter; and Vallia F. Ewart, daughter. They had no other children, except those above named, then or at any time, and all of said children were on April 19, 1922, living away from the home of their parents. On said date of April 19, 1922, the said Charles and Emma L. Stinton signed, acknowledged, executed and delivered a deed of said farm to Clyde K. Ewart and their daughter, Vallia F. Ewart, husband and wife. The expressed consideration for the execution and delivery of said deed was the sum of $18,-000 and other considerations, $8,000 of which was a gift to the grantees.

The grantees were to pay as part of the consideration for the deed the sum of $550 on March 1, 1923, and a like sum on March 1 annually thereafter to the grantors of said deed, and in case of the death of one of the grantors to the survivor; and said grantees were to pay the taxes on said real estate for the year 1922 and all subsequent years.

Said deed further provided that the grantees of said deed were to pay $10,000 " *.* * one year from the date of the death of the surviving grantor herein, with interest at the rate of five and one-half per cent. (5½%) from date of said death until date of payment. Said payment to be made unto Vern L. Stinton, of Ubero, Montana, Ethel L. Stinton, of Ryegate, Montana, and Elva A. Archer, of Ryegate, Montana, share and share alike; provided that should any of the three last mentioned persons depart this life, leaving no heirs of his or her body surviving, that his or her share of Ten Thousand and no/100 ($10,000) Dollars shall lapse and shall be divided share and share alike among the survivor, or survivors and grantee Vallia F. Ewart or their respective heirs, administrators, or assigns."

That on said date of April 19, 1922, the same date the deed was executed and delivered, the said Charles Stinton, executed a last will and testament whereby he bequeathed and devised all of his other property; that he made three codicils to said last will and testament on the following subsequent dates, to wit: April 10, 1925, December 1, 1934, and January 5, 1935.

That on June 15, 1936, the grantors and grantees to the deed executed on April 19, 1922, made an instrument designated "Amendment to Deed" whereby it was provided that the grantees shall have the right on the maturity of said $10,000 obligation to pay the same to the legally appointed representative, executor or administrator of the estate of Charles Stinton, the same to be distributed according to the terms of the last will and testament and several codicils executed by the said Charles Stinton.

At the time of the execution of the deed heretofore mentioned Vern L. Stinton was indebted to his father, Charles Stinton, in the sum of $3,500.

Charles Stinton died May 17, 1940, and thereafter his last will and testament and several codicils thereto were duly admitted to probate in the county court of Fillmore county, Nebraska, and Ethel L. Stinton Jones was duly appointed executrix thereof and is now the duly appointed, qualified and acting executrix of said estate.

Emma L. Stinton, the widow of Charles Stinton, died October 8, 1940.

Clyde K. Ewart and Vallia F. Ewart made the annual payments of $550 on March 1, 1923, and thereafter, and paid the 1922 and subsequent real estate taxes, as was provided in said deed.

Defendants, Clyde K. Ewart and Vallia F. Ewart, have not paid said sum of $10,000 as provided in said deed.

Vern L. Stinton, son of the said Charles Stinton and Emma L. Stinton, died July 4, 1928, leaving him surviving, his widow, the defendant, Daisy Stinton Beeker; his daughter, the defendant, Laveeta Moore, thirty-five years of age; and an infant son, Allen Stinton, who died April 5, 1929, at the age of ten years.

Elva A. Archer, daughter of the said Charles Stinton and Emma L. Stinton, died August 5, 1934, leaving her surviving three sons, the defendants, Harold Dean Archer, Paul Augustus Archer, of legal age, and Gerald Eugene Archer, who is a minor.

Another fact considered of importance by some of the

parties is the codicil of Mr. Stinton's will executed on December 1, 1934. The original will was made on the same day as the deed, April 19, 1922, and after giving his wife a life interest in his property, in case she survived him, bequeathed and devised the remainder to his three children other than Vallia who had been provided for by the deed, viz., Vern, Elva and Ethel, share and share alike. By December 1, 1934, the date of the codicil, two of his children, Vern and Elva, had died, Vern leaving one child and Elva three. Vern when he died had owed his father $5,000 and one of the purposes of the codicil and the amendment to the deed was to offset this indebtedness against his share of the Stinton estate. The codicil of December 1, 1934, left the provisions for his wife and daughter Ethel intact and then bequeathed and devised the remaining two-thirds of his estate equally to the four grandchildren above referred to, but provided that from the one-fourth given to Laveeta Moore, the daughter of Vern, any of Vern's $5,000 indebtedness and interest which had not been paid should be deducted, but that no claim should be made against her for any deficiency.

The deed of April 19, 1922, further provided that the grantees shall keep the buildings, appurtenances and improvements in as good repair as they now are during the period above set forth, and "As a part of the consideration of this conveyance, it is stipulated and agreed that if the grantees shall fail or neglect to promptly pay the annual payments hereinbefore stated or fail to pay the taxes at or before the maturity, or should cause or permit the buildings, appurtenances, and improvements to become out of repair, or to be neglected or damaged so as to materially decrease the value of the security herein, then and in that event, the grantors or those who may be entitled to rights hereunder shall have the right to foreclose the agreement embodied herein, and sell the premises described in the form and manner provided by law for the foreclosure of mortgages, and out of the proceeds be paid a sum sufficient to satisfy the obligations herein set forth, whether the same

shall have all been matured or in part may be reasonably anticipated."

The original deed was executed by Mr. and Mrs. Stinton only, the "Amendment to Deed" by Mr. and Mrs. Stinton and the grantees Mr. and Mrs. Ewart.

This case as will be noticed from the statement of facts presents the question of the validity of the amendment to the deed in so far as it affects the rights of the named beneficiaries to the $10,000, which in turn depends upon whether or not the provisions for their benefit in the deed giving them this $10,000 was a valid and completed gift *inter vivos* as of the date of the deed. The district court held that it was a valid gift and that the subsequent attempt to modify it by the amendment and codicil referred to were ineffectual and the correctness of this holding is the question now presented to this court.

Many cases involving gifts *inter vivos* have been before the courts and the general principles are, we think, quite well established. The difficulty is in applying them to various sets of facts. Appellants call attention in their brief to the four elements that must concur to make a valid gift *inter vivos*, to wit: 1. Intention to give; 2. Delivery; 3. End of dominion of donor, and 4. Creation of dominion of donee. *Madison Trust Co. v. Skogstrom,* 222 Wis. 585, 269 N. W. 249.

One of the difficult questions in this case has to do with the question of delivery. Manual delivery of certain species of property cannot be made and the trend of modern decisions is to permit a symbolic or constructive delivery where the circumstances of the case require it. 28 C. J. 636. In *Dinslage v. Stratman,* 105 Neb. 274, 180 N. W. 81, a son owed his mother $1,400 on open account. His mother in her lifetime directed him to pay $1,000 of this to her granddaughter, the daughter of another son. The payment was not made in the lifetime of the mother. The court held this to be a valid delivery. "Hence, she (the mother, Mrs. Stratman) did everything in June, 1915, that was in her power to divest herself of the title to the chose in action,

and invest Tracey (the granddaughter) with it. We think that there was a sufficient delivery. To hold otherwise would be to say that there can be no delivery of a chose in action unless it is accompanied by delivery of written evidence of it, * * * ." The second and third points of the syllabus in *Dinslage v. Stratman, supra,* are as follows: "The mere fact that actual enjoyment of the gift by the donee is, by the declaration of the gift, postponed until the death of the donor, does not render the gift either conditional, or testamentary, or in any way invalid."

"In such a case, the stipulation that actual enjoyment of the gift is to be deferred until the donor's death only marks the time when enjoyment begins, and is not a condition, since the donor's death is inevitable."

In *In re Estate of Dayton,* 121 Neb. 402, 237 N. W. 303, Dr. Dayton of Lincoln, had purchased 10 bonds in the sum of $1,000 each, registered them in the name of a nurse for a long time in his employ. He kept the bonds in his own safety deposit box for his convenience in collecting the interest thereon so long as he lived; he had stated to witnesses that the bonds were a gift to the nurse. Held that a complete delivery of the bonds to the nurse had been effected.

In *Novak v. Reeson,* 110 Neb. 229, 193 N. W. 348, it is held: "Where a father, in making a loan of $4,000 to one of his sons, required said son to execute four notes in the sum of $1,000 each, payable to each of his four daughters, which said notes the father delivered to another son, with directions to hold said notes, collect the interest thereon and pay same to father during his lifetime, and at his death to deliver the notes to each of the daughters named therein, *held* a complete and irrevocable gift of the notes to the daughters."

In *Snyder v. Snyder,* 131 Mich. 658, 92 N. W. 353, it is held as indicated by the second paragraph of the syllabus: "Where one assigns a mortgage to another on an understanding that moneys collected on the mortgage during the assignor's life shall be paid to her, and that any balance

remaining due at the time of her death shall belong to the assignee, there is no gift *inter vivos.*" Discussing the matter in the opinion 'it is said: "To constitute a valid gift *inter vivos,* it must take effect at once, and pass entirely beyond the control of the donor. The retaining of any control in the hands of the donor over the subject of the gift renders it invalid. * * * Under defendant Thomas' own statement in his answer, his mother retained the entire control over this gift, and had the right to retain as her own all sums that Benjamin paid to her or to Thomas during her lifetime. She could collect and use the entire amount. It follows that this assignment must be held void."

In *Hild v. Hild,* 135 Neb. 896, 284 N. W. 730, the following rules applicable to gifts *inter vivos* are set forth in the opinion:

"A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential element of the gift * * * ."

" * * * the person asserting 'it (a gift) must prove all essential elements by clear, direct, positive, express and unambiguous evidence."

In *Madison Trust Co. v. Skogstrom, supra,* the general rules relating to gifts *inter vivos* are stated, but in that case the court found as a matter of fact that there was no delivery of the certificate which had been assigned to the claimant, " * * * but, on the contrary, delivery was rather pointedly refused." The alleged gift was in that case a trust certificate owned by one Crowley which respondent Skogstrom claimed he had given to her. Further discussing the question of delivery in the opinion it is said: "After the noting of the assignment by the Central Wisconsin Trust Company, Mr. Schenck left the certificate on the corner of his desk. * * * Mr. Ferris testified that when the certificate with the assignment on 'it was returned to Mr. Schenck's desk, the suggestion was made that he turn it over to the respondent, to which Crowley replied, 'Oh no. Oh no, I will keep that myself, I will take care of that.' Before executing the assignment, he had told respondent that

he did not want to 'sign it over to her' and that 'he wanted it fixed in case something happened to him.'"

In *Ladman v. Farmers & Merchants Bank of Milligan*, 130 Neb. 460, 265 N. W. 252, the general rules in regard to gifts are well stated, but since there seems to be little or no dispute about the general rules we will not restate them. The facts in that case clearly distinguish it from the instant case. The instrument under consideration in that case did not state the amount of the deposit which was the subject of the alleged gift, nor designate any particular amount which should go to any particular child, but left for future determination by some one, not designated, the amount that should be set up and belong to each child; the instrument also provided that the children should not be entitled to the money until after the mother's death, and that the mother might use the funds deposited.

In *Andersen v. Luikart*, 127 Neb. 256, 255 N. W. 18, the general rules are again stated and there is a good review of the Nebraska cases in the opinion by Judge Good. The facts in that case are set forth in the following quotation from the opinion:

"In the instant case there is no gift, nor language showing a present intention to make a gift, by the plaintiff to his daughter. He did not communicate to her the fact that he had executed a release. He did not deliver the note or mortgage to her, but kept them in his possession and gave no direction to any one to deliver the note and mortgage to her. The release was executed evidently with the thought in his mind that he might not live to return from his trip to Denmark, and, in that event, the release should operate. We think the evidence falls far short of being convincing that there was any intention on the part of plaintiff to make a gift to his daughter. Moreover, long after this release was executed the daughter and her husband executed an extension agreement of the mortgage and note, recognizing their full liability for $5,000 and interest thereon."

In *Tucker v. Tucker*, 138 Ia. 344, 116 N. W. 119, it was held:

"Where a father executed a completed gift of certain certificates of deposit and stock to his sons, retaining only the right to collect interest and dividends thereon during his life, a change in the form of the certificates of deposit, made by the father without consultation of the donees only to enable the father to draw the interest, and without any purpose on his part to revoke the gift or assert title to the fund, was ineffective to invalidate the gift."

There is an excellent statement in the opinion of the principles governing cases of this kind, part of which we quote as follows:

"If the gift is absolute, the mere postponement of the enjoyment until the death of the donor is not material and will not defeat it. * * * In *McNally v. McAndrew*, 98 Wis. 62 (73 N. W. 315), a father indorsed an assignment on certain notes and the mortgages securing them, and gave them to his son with the understanding the donor was to have the interest on them so long as he lived; and subsequently the notes were returned to him to enable him to collect the interest and were found among his papers at his death. The court sustained the gift, and held the circumstances not to show a revocation. * * * The test seems to be whether any interest in the property itself has been retained, as distinguished from the mere use or enjoyment."

Other cases were cited by both parties and have been examined, but a discussion of more of them would unduly extend this opinion. Besides the general rules are well established, each case depends on its own facts to which must be applied the established principles. To this task we will now devote attention. Taking up the deed of April 19, 1922, upon which the claims of appellees are founded we note first that there is an absolute and unconditional transfer of the farm in question. *Emkee v. Ashton*, 139 Minn. 443, 166 N. W. 1079, is cited by appellants. There the parents conveyed the land to one son who was to pay them $200 and deliver them a dressed hog each year during the remainder of their lives and to pay certain sums ranging from $5 to $300 to other children of the grantors, all of ma-

ture years and residing in homes of their own, within six months after the death of the grantors. The deed is not set out in the opinion, but the opinion says with reference to it that "The conveyance of the property by the Krugers to the son Albert did not unconditionally vest title in the grantee. On the contrary the passing of full title was reserved and made dependent upon a performance of the conditions imposed by the support agreement, a failure of which would constitute a breach of the contract entitling the grantors to either an annulment of the conveyance, or to such other relief as might be appropriate to the facts presented." The land was reconveyed by the grantees to the grantor and the court held that the liens were extinguished. Here on the contrary the deed did vest unconditional title in the grantees and in case of their failure to pay the $550 reserved to grantors their only remedy was by foreclosure.

The direction to the grantees to pay the $10,000 to the three children of grantors is in positive and unequivocal terms. While the payment was to be postponed until one year after the death of the surviving grantor it comes under the rule laid down in *Dinslage v. Stratman, supra,* and other cases, which hold that the stipulation that actual enjoyment of the gift is to be deferred until the donor's death only marks the time when enjoyment begins, and is not a condition, since the donor's death is inevitable. While the direction to pay is not coupled with words actually giving the $10,000 to the three children of grantors we think that there can be no doubt from reading the entire deed that the grantors meant the direction to pay to include a giving of the $10,000 to the three children referred to.

That the donors intended to give the donees dominion over the gift is further indicated by the fact that they were given the right to foreclose against the grantees for breach of any of the conditions of the deed. In the last paragraph before the date it is provided that should the grantees fail or neglect to pay the annual payments or comply with other provisions of the deed therein referred to not only the

grantors, but " * * * those who may be entitled to rights hereunder shall have the right to foreclose the agreement embodied herein, and sell the premises described in the form and manner provided by law for the foreclosure of mortgages, and out of the proceeds be paid a sum sufficient to satisfy the obligations herein set forth, whether the same shall have all been matured or in part may be reasonably anticipated."

There are other considerations that lead to the conclusion that a present and irrevocable gift was intended. In making the deed all parties undoubtedly considered that it amounted to a gift of $8,000 to the grantees and a gift of the $10,000 lien to the other three children of the grantors. It is not substantially different than if the grantees had given a mortgage of $10,000 to the donees with interest at 5½ per cent. payable annually to the grantors. Now if the grantees had given a $10,000 mortgage to the donees with provision for payment to the grantors of the interest during their lifetime and the principal one year after their death it could hardly be successfully urged that such was not a gift to the donees. Yet the conditions of the deed are very similar to those of a mortgage providing as it does for the payment of the $550 (equivalent to interest) annually, the payment of taxes, the keeping up of the improvements, and finally the provision in relation to foreclosure.

It seems to us therefore that all the elements of a gift *inter vivos* are satisfied, to wit: (1) Intention to give, which is indicated by the unequivocal direction to pay; (2) Delivery in about the only way that delivery could be made by putting the deed of record, notifying the donees (the evidence in regard to notice is rather vague, but sufficient to establish we think that these members of the family although living at a distance got notice that this provision had been made for them, and did not refuse it). Delivery was not dissimilar to that established in *Dinslage v. Stratman, supra, In re Estate of Dayton, supra,* and *Novak v. Reeson, supra,* and other cases. (3) End of dominion of donor. The only right reserved by the donors was to fore-

close against the land if the provisions in the deed in their favor were not met. They reserved no interest in the land except this right to foreclose and no interest whatever in the $10,000. The fact that the $10,000 might have been wiped out in whole or in part by a foreclosure proceeding does not show retention of any control over the $10,000, but only that they had a superior lien. If they had owned a $10,000 second mortgage on any other land and given it to these three children it would not affect the validity of the gift even though they themselves had owned a first mortgage on the same land and the second mortgage had been wiped out by a foreclosure of the first mortgage. (4) Creation of dominion of donee. Dominion in cases of this kind must it seems to us from the very nature of the right be largely symbolical or token. The donors having transferred the right to the donees by unequivocal intention and delivery *in præsenti* of this $10,000 lien which however would not be due until after the death of the donors the dominion is perhaps only a right to protect the gift which the deed gives them in the form of a right to foreclose, they also had the right which the law would give them to bring suitable action if an effort were made to cancel or destroy it, and such rights as the law gives remaindermen to protect property in which they are interested. The donors having entirely given up dominion over this $10,000 lien and gift, the donees obtained by the same instrument dominion over it.

All of the elements to make a valid gift *inter vivos* having concurred we find that the gift was valid and could not be canceled by the subsequent amendment to deed executed by grantors and grantees.

One other question remains. It is contended that the share of Vern L. Stinton who was killed on July 4, 1928, intestate, should be paid to his administrator. No administrator was ever appointed and it is not claimed that it is needed to pay his debts which by now have undoubtedly been outlawed or barred by the statute of non-claims. The meaning of the deed as implied from the language used and

the provisions made seems to be that the Stintons wanted the share of each donee to go to the heirs of his body in case of the death of the original donee. The district court found that the daughter of Vern L. Stinton and his only surviving child was entitled to the share of her father as substituted donee. No creditor and no representative of the estate of Vern L. Stinton is here complaining. His widow is a party to this action and is not complaining. We think that the finding of the district court is correct.

There is a very interesting and instructive discussion in the briefs as to whether the provision in the deed for the donees is in the nature of a contract for their benefit as third persons. Inasmuch as we have held that there was a valid gift *inter vivos* and this opinion is already quite long we will not discuss that question.

The judgment of the district court is therefore in all things affirmed.

AFFIRMED.