HENRY DINSLAGE, ADMINISTRATOR, APPELLEE, v. FRANK STRATMAN, APPELLANT.

FILED NOVEMBER 10, 1920. No. 20704.

1. Gifts: DELIVERY. Where the proof is clear of an intention to make an absolute gift *inter vivos* of a chose in action, arising from a debt not evidenced by a promissory note or other document, an unqualified direction by the donor to the debtor to pay the debt to the donee, instead of to the creditor, is a sufficient delivery of the gift, it being the only delivery of which the chose is susceptible.

2. ———: VALIDITY. The mere fact that actual enjoyment of the gift by the donee is, by the declaration of the gift, postponed until the death of the donor, does not render the gift either conditional or testamentary, or in any way invalid.

3. ———: ———. In such a case, the stipulation that actual enjoyment of the gift is to be deferred until the donor's death only marks the time when enjoyment begins, and is not a condition, since the donor's death is inevitable.

4. Evidence examined, and *held* to require a reversal of the judgment of the district court.

APPEAL from the district court for Cuming county: ANSON A. WELCH, JUDGE. *Reversed and dismissed.*

*F. D. Hunker* and *Brome & Ramsey,* for appellant.

*H. M. Nicholson* and *W. J. Donahue, contra.*

CAIN, C.

This action was brought by Henry Dinslage, as administrator of the estate of Thresa Stratman, to recover the sum. of $1,400 from the defendant, Frank Stratman, for money loaned him by Thresa Stratman in her lifetime. The defense interposed was that, while the defendant had been indebted to Thresa Stratman in the amount named, he had paid it, by her direction, to her granddaughter Tracey Dinslage. At the conclusion of the evidence, the trial court directed the jury to render a verdict for the plaintiff in the sum of $1,035.75. Defendant's motion for a new trial being overruled, he appeals.

This is the second hearing of this case in this court. Upon the former hearing, the judgment of the district court was reversed and the action dismissed, a memorandum opinion being written by Mr. Commissioner Dorsey. A rehearing was granted, Commissioner Dorsey himself suggesting it, out of abundant caution and on account of the comparative novelty of the questions involved in this jurisdiction. Appellee filed a brief on the rehearing, and the cause has been reargued and resubmitted.

The facts are not in dispute, and are as follows: Thresa Stratman lived on a farm in Cuming county with her son, Frank Stratman, the defendant, from 1909 until her death on October 6, 1915. She had, living in the same neighborhood, another son by a former marriage, John Dinslage, the father of Tracey Dinslage, who was eight years of age at the time of her grandmother's death. She owned a mortgage of $5,000 and was entitled to the $1,400 due her from the defendant, making a total of $6,400. The indebted-

ness of the defendant to his mother was not evidenced by a promissory note or other writing. The defendant had borrowed the money from his mother at various times until the loans aggregated $1,400, and he paid the interest to his mother.

When Tracey Dinslage was three years old she went to live with her grandmother at the home of the defendant, Frank Stratman. The evidence clearly shows without dispute that, shortly after Tracey went to live with her grandmother, her father wanted her to come home, and often said so, but the grandmother desired the little girl to remain with her, and said to John Dinslage, the father, that she wanted Tracey to stay with her until Tracey reached 18 years of age or the grandmother died and she would give her $1,000. The fact of this desire of the grandmother to have Tracey stay with her, and the certainty that, if she did stay until she reached 18 years of age or the grandmother died, she was to have $1,000, is substantiated by the testimony of several witnesses as to conversations to that effect between them and Thresa Stratman. In June, 1915, Thresa Stratman told the defendant, in the presence of John Dinslage, that he should pay $1,000 of the sum he owed her to Tracey. John Dinslage testified to this conversation as follows: "She says that Frank Stratman, should pay the little girl $1,000; that she (Thresa) would pay her $1,000 if she be of age, and, if she died before that, Frank Stratman should pay her $1,000 at her death." And on cross-examination he testified: "Well, she told me if that girl reached that age and stay with her she would give her a $1,000, and if she died that Frank Stratman should pay the girl the money." The $400 was to be paid to the priest of Aloys for saying masses for the repose of the souls of Thresa Stratman and her husband, who had died some years before. Thus it will be seen that in June, 1915, Thresa Stratman did everything in her power to make final disposition of the chose in action arising from her loans of money to her son, the defendant. She told John Dinslage that his daughter, Tracey, was to get the $1,000, and she

directed the defendant to pay that sum to Tracey, at the time of her death, and said that, if she was alive when Tracey reached the age of 18 years, she herself would then pay it to Tracey. This intent of the grandmother was communicated to several persons extending over a period of several years, and as late as two months before her death. The record compels the conviction that she regarded this arrangement as settled, and that she intended to set apart, and did set apart, the money which Frank Stratman owed her as a fund to carry out the arrangement. This conclusion is corroborated by the fact that on July 9, 1915, when C. W. Ackerman, of West Point, assisted her in disposing of the $5,000 mortgage, she said to him that she "didn't have any more. She had given it all away." The grandmother died on October 6, 1915, and on February 17, 1916, the defendant, Frank Stratman, paid the $1,000 to John Dinslage "for Tracy," and had paid the priest of Aloys about $150 of the $400 at the time of the trial of this case. By some arrangement, not clear in the record, the gift of $400 was allowed to stand, and so is eliminated from the case, except as to such significance as it might have as proof.

The defendant contends that the $1,000 was an executed gift *inter vivos,* and therefore irrevocable; that transfer of the title to the money to the defendant in trust for Tracey Dinslage was complete in the lifetime of the donor, although actual enjoyment of the fund by the donee was postponed; and that his payment of the $1,000 to John Dinslage "for Tracey" was a payment of the debt to that extent. On the other hand, the administrator insists that, at most, the evidence shows only an intent to make a gift, which was never executed by delivery, and that it was not absolute, but conditional, and the donor retained dominion over it, and that whatever was said and done was testamentary in character, and, lacking the formalities prescribed for the execution of a will, was void.

The administrator bases his contention that Thresa Stratman retained dominion over the fund upon the testi-

mony of Fred Brandstetter on cross-examination, where he testified to conversations he had with her in which, referring to this fund, she said that, "if she needed it, it would be spent in her lifetime." Neither John Dinslage nor Frank Stratman was present at either of these conversations. But upon this evidence the administrator contends that the gift was not absolute, as the donor retained the right to use it if she needed it. We think it a sufficient answer to this contention to point out that there is no evidence that the donor made such a statement at the time of the donation, or in the presence of John Dinslage or the defendant, and that, if the declaration and direction of the donor to the defendant in June, 1915, under all the circumstances, constituted a valid gift *inter vivos*, other statements made by her to strangers at other times could not affect its validity. Parenthetically, it may be observed that, in Brandstetter's testimony in chief, when he detailed the conversations he had with Thresa Stratman, professing to give them in full, he said nothing indicating that she intended to use, or claimed the right to use, any of the money, and his testimony in that regard on cross-examination was merely an affirmative answer to a question of counsel incorporating the statement quoted above. We think that, if the gift were validly executed in June, 1915, when in the presence of John Dinslage and of the defendant, Thresa Stratman directed the defendant to pay the $1,000 to Tracey, then any subsequent declaration by her to a stranger would not affect its validity.

The administrator, appellee, next insists that the evidence, at most, shows only an intention of the grandmother to make a gift to her granddaughter, and that the attempted gift is a nullity for lack of delivery. We have no doubt that delivery, either actual or constructive, is an indispensable essential to the validity of the gift, and the question for solution is whether the evidence shows such a delivery, and that point will now be considered.

The rule is thus laid down in 20 Cyc. 1196 *et seq*: "Delivery, to be effectual, must be according to the nature and character of the thing given, and hence may be actual or constructive according to the circumstances. There must, however, be a parting by the donor with all present and future legal power and dominion over the property."

At page 1198 appears the following: "The rule is well settled, however, that delivery need not be made to the donee personally, but may be made to a third person as agent or trustee, for the use of the donee, and under such circumstances as indicate that the donor relinquishes all right to the possession or control of the property, and intends to vest a present title in the donee."

At page 1199 : "The trend of modern decisions is toward a modification of the early English rule requiring an actual, manual delivery of the property, in all cases, to constitute a valid gift *inter vivos*, and the substitution therefor of a symbolic or constructive delivery, where the circumstances of the case require it. Now according to the better doctrine, an unequivocal declaration of gift, accompained by a delivery of the only means by which possession of the thing given can be obtained, is sufficient."

In *Foster v. Murphy*, 76 Neb. 576, this court held: "The indorsement and delivery of a certificate of deposit, with the intention of making a gift of the deposit thereby represented to the party to whom the certificate is thus delivered, operates as a gift of the fund itself."

The statement of the rule in 20 Cyc. 1199, that "an unequivocal declaration of gift, accompained by a delivery of the only means by which possession of the thing given can be obtained, is sufficient," is supported by the following cases: *Ebel v. Piehl*, 134 Mich. 64; *Green v. Langdon*, 28 Mich. 221; *Gammon Theological Seminary v. Robbins*, 128 Ind. 85; *Martin v. McCullough*, 136 Ind. 331; *Smith v. Youngblood*, 68 Ark. 255; *McGillicuddy v. Cook*, 5 Blackf. (Ind.) 179; *Hawn v. Stoler*, 22 Pa. Super. Ct. 307; *Pirie v. LeSaulnier*, 161 Wis. 503; *Hagerman v. Wigent*, 108 Mich. 192. In *Ebel v. Piehl, supra*, it was

held that an oral promise by a son to his father, on receiving property from the father, that on the latter's death $400 should be paid to a daughter, created a chose in action in favor of the father, which, on being assigned to the daughter, could be enforced by her; and it was also held that the transfer of the chose in action to the daughter did not constitute a gift *in futuro,* but a gift *in præsenti* of a promise to pay *in futuro.*

In the instant case, there was no promissory note or other documentary evidence of the $1,400 debt, and consequently there was nothing tangible that could be delivered by Thres i Stratman to any one. The whole thing rested in parol. The only thing that could be done by her was to direct her debtor to pay $1,000 of the money to Tracey, instead of to herself. It is conclusively established by the evidence that she gave this direction. Hence, she did everything in June, 1915, that was in her power to divest herself of the title to the chose in action, and invest Tracey with it. We think that there was a sufficient delivery. To hold otherwise would be to say that there can be no delivery of a chose in action unless it is accompained by delivery of written evidence of it, and this would be absurd.

The administrator also contends that the gift was not absolute, but conditional only upon the death of the donor, and for that reason is invalid. As the death of the donor was inevitable at some time, we do not consider it a condition to the vesting of the title in Tracey, but only as marking the time when she would come into the enjoyment of it. That postponement of the enjoyment of a gift until a future time does not affect its validity is well supported by the authorities. In the well-considered case of *Tucker v. Tucker,* 138 Ia. 344, it is said: "If the gift is absolute, the mere postponement of the enjoyment until the death of the donor is not material, and will not defeat it"— citing many cases, among which are: *Schollmier v. Schoendelen,* 78 Ia. 426; *Hogan v. Sullivan,* 114 Ia. 456; *Scrivens v. North Easton Savings Bank,* 166 Mass. 255; *McNally v. McAndrew,* 98 Wis. 62; *Martin v. Martin,* 170 Ill. 18;

*Davis v. Ney,* 125 Mass. 590, 28 Am. Rep. 272. To the same effect is the case of *Innes v. Potter,* 130 Minn. 320, and *Bostwick v. Mahaffy,* 48 Mich. 342. In *Brown v. Westerfield,* 47 Neb. 399, *Dunlap v. Marnell,* 95 Neb. 535, and *Roepke v. Nutzmann,* 95 Neb. 589, it was held that, where deeds conveying real estate are signed and acknowledged by the grantor, and by him left with a third person to be delivered to the grantee upon the death of the grantor, the title vests in the grantee upon such death. The postponement of the actual delivery of the deed does not affect its validity. In our opinion the fact that the $1,000 was not to be paid to the donee until after the death of the donor, neither made the gift conditional, nor did the postponement affect its validity or render it testamentary in character.

In this case, the father of Tracey desired that she come home and live with him, but the grandmother wanted the little girl to live with her until her death, and it was understood by all that Tracey was entitled to the fund of $1,000, to be enjoyed by her after her grandmother's death. Tracey did stay with her grandmother continuously until her death, and it is inconceivable to us that she had any other notion than that the gift was absolute, and that her direction to the defendant to pay that sum to Tracey after her death settled the matter beyond recall. It seems to us that the evidence without dispute conclusively establishes that such was the grandmother's intent, and that she did everything in her power to effectuate it. We therefore hold that there was an absolute completed gift of the fund to Tracey at the time when Thresa Stratman directed defendant to pay the money to Tracey upon her death, and that there was a sufficient constructive delivery.

We recommend that the former decision be adhered to, and that the judgment of the district court be reversed and the action dismissed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and

the action dismissed, and this opinion is adopted by and made the opinion of the court.

REVERSED AND DISSMISSED.