VELMA RORABAUGH, EXECUTRIX AND LEGAL REPRESENTATIVE OF THE ESTATE OF BEATRICE C. SCHROENROCK, DECEASED, APPELLEE, V. COLETTA KAY GARVIS, APPELLANT, IMPLEADED WITH UNION LOAN AND SAVINGS ASSOCIATION, A CORPORATION, APPELLEE.

252 N. W. 2d 161

Filed April 6, 1977. No. 40916.

Duane L. Nelson, for appellant.

Pierson, Pierson & Fitchett for appellee Rorabaugh.

Douglas Curry, for appellee Union Loan & Sav. Assn.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action brought by the executrix of the estate of Beatrice C. Schroenrock to require Union Loan and Savings Association to pay her the funds held in a passbook savings account in the name of the decedent and Coletta Kay Garvis. Garvis claimed ownership of the fund, as a joint tenant with right of survivorship. The trial court held for plaintiff-executrix, and directed the payment of the funds to her. Garvis perfected this appeal. We find the account to be a joint one with right of survivorship, and reverse.

Decedent had a passbook savings account with Union. On March 19, 1974, decedent and her daughter, defendant Garvis, went to Union for the purpose of adding the name of Garvis to the account. They were directed to an employee of Union, Agnes Neal, who was authorized to make the change. Neal erroneously informed them that if the account were changed on March 19, the quarterly dividend to be paid the last of the month would be lost. Neal suggested she could change the account after the dividend was credited if decedent and Garvis would both

sign a signature card in blank and leave the passbook with her.

Neal testified she told decedent and Garvis she would change the account at the end of the month. Decedent told her when she did to mail the passbook to Garvis. Garvis testified Neal told them the account would be changed when the dividend was credited to the account. Decedent gave the passbook to Neal and she and Garvis both signed the new signature card on March 19, 1974.

Decedent died March 28, 1974. On March 29, 1974, Neal closed out the Schroenrock account and transferred the funds to an account in the names of decedent and Garvis as joint tenants with right of survivorship. The quarterly dividend was posted to the account on March 24, 1974, bringing the balance to $4,101.66. Neal completed the transfer on Union's books on March 29, 1974, the day after Schroenrock's death, and mailed the passbook to Garvis.

The testimony is undisputed that on March 19, 1974, Schroenrock and Garvis had done everything they needed to do to make an effective transfer of the account from Schroenrock to Schroenrock and Garvis. The only thing remaining to be done was for Union to complete the transaction on its records and to mail the passbook to Garvis.

Kenneth King, who was president of Union at the time, testified that it was possible on March 19, 1974, to change an individual savings account to a joint savings account without loss of dividends during a quarterly dividend period. Consequently, Neal was in error in the statement she made at the time Schroenrock attempted to make the transfer.

It is undisputed that deceased, Schroenrock, went to Union on March 19, 1974, with Garvis with the intent and for the express purpose of then and there making a completed gift to Garvis of a joint interest in her savings account. Only because Neal mistakenly introduced the specter of a lost quarterly divi-

dend, was the paper work at Union not completed on that day. However, everything required of decedent and Garvis to effectuate the transfer was done at that time. Directions were given to Neal to complete the transfer when it could be done and to mail the passbook to Garvis.

Was there an effective transfer of the funds into a joint account? "To make a valid and effective gift inter vivos, there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee." Kolc v. Krystyniak, 196 Neb. 16, 241 N. W. 2d 348 (1976). The District Court determined there was no immediate donative intent on the part of decedent and no delivery prior to her death. We believe the decedent had the specific intent to transfer the account to a joint account with her daughter and that she did everything possible to effectuate that transfer. The delivery of the passbook with instructions to make the transfer and to send the new passbook to Garvis was an effective delivery to carry out the intent to make the transfer.

The trial court viewed Neal as the agent of the decedent to complete the delivery. Neal was not the agent of decedent but the agent of Union. Delivery to her was delivery to Union for the purpose of the transfer. The intervening death of decedent did not change that situation. "The essential elements of a gift inter vivos are donative intent, delivery, and acceptance. Once it is ascertained that it was the intention of the donor to make a gift inter vivos of an undivided interest in a chattel or chose in action, and all is done under the circumstances which is possible in the matter of delivery, the gift will be sustained. In such cases, the delivery may be symbolical or constructive if as nearly perfect and complete as the nature of the property and the attendant circumstances will permit." Crowell v. Milligan, 157 Neb. 127, 59 N. W. 2d 346 (1953).

While not exactly on point, the case of White v.

Bank of America Nat. Trust & Sav. Assn., 53 Cal. App. 2d 831, 128 P. 2d 600 (1942), is interesting because it is in some respects analogous. There, White asked a bank employee to convert her individual savings account to a joint account with Maria and David Torres. The bank employee prepared a signature card for deceased and the Torreses to sign. They did so, and the card was returned to the bank. On August 9, the bank employee had the deceased execute some documents transferring funds into the new account. On August 11, before the employee had recorded the transactions on the bank's books because of an intervening weekend, the deceased died. The following language from that case is equally applicable here: "When the clear intention of the donor to make a gift can be carried out without doing violence to the established principles of law the courts should not seek highly technical reasons for defeating the gift."

When decedent went to Union on March 19, all she was expecting Union would need to do would be to add the Garvis name to the existing account and to secure a new signature card to include Garvis' signature. At most, all that was necessary were bookkeeping entries on the part of Union. The delay was for the convenience of Union and not for the convenience of the decedent. Rather, the action taken by Union has been to the distinct disadvantage of Garvis and has created additional expense for her and decedent's estate.

We find that decedent created an effective joint tenancy and that the surviving tenant, Garvis, is the owner of the account.

The judgment is reversed and the cause is remanded with directions to dismiss the executrix' action.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., concurring.

I concur in the result, but disagree with the rationale.

The parties present this case to us in traditional terms of gifts of personal property, to wit, (1) donative intent on the part of the giver; (2) delivery by the donor; and (3) acceptance by the donee. In re Estate of Scott, 148 Neb. 182, 26 N. W. 2d 799. The problem with analyzing this transaction wholly in traditional terms is that title to certain types of property cannot be transferred simply by delivery. A case in point is United States government bonds. "A United States savings bond is a contract between the federal government and the purchaser, and Treasury Department regulations governing such bonds are incorporated into the contract by reference and are beyond the reach of state law to modify or destroy." Nelson v. Rasmussen, 164 Neb. 274, 82 N. W. 2d 418; Slocum v. Hevelone, 196 Neb. 482, 243 N. W. 2d 773.

A similar situation arises in connection with bank accounts. One does not transfer title to a bank account by delivering it. The relation between banker and depositor is created by contract. 9 C. J. S., Banks and Banking, § 267b, p. 545. Joint accounts are also created by contract. 9 C. J. S., Banks and Banking, § 286, p. 595. In Nebraska there is a specific statutory provision governing joint accounts. Section 8-136, R. R. S. 1943, provides: "When a deposit in any bank in this state is made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors, such deposit, or any part thereof, or increase thereof, may be delivered or paid to either of such persons or to the survivor or survivors in due course of business." It seems clear from our decided cases that where, as here, the deposit had already been made in the bank, execution of the signature card by the decedent and Garvis and the acceptance of the same by the bank created the necessary contract and was

sufficient compliance with section 8-136, R. R. S. 1943. Parkening v. Haffke, 153 Neb. 678, 46 N. W. 2d 117. Section 8-136, R. R. S. 1943, has the same binding effect as the statute of wills or any other valid statute prescribing the methods to be used to make a valid conveyance of property. Young v. McCoy, 152 Neb. 138, 40 N. W. 2d 540. A simple designation on the passbook and on the books of the bank that a certain person is to receive the proceeds of the account on the death of the survivor is not a compliance with section 8-136, R. R. S. 1943. Young v. McCoy, *supra*. It would seem to follow as a corollary that the mechanical process by the bank following execution and delivery of the deposit card to the bank is not a necessary part of either the contract or compliance with section 8-136, R. R. S. 1943. The contract was made by the execution of the signature card and its delivery to the bank.

Even if it were to be said that the decedent delivered the signature card to the bank conditioned upon later payment of the earned interest and that decedent could have revoked the transaction until the condition occurred (and I do not say that), it is indisputably clear that the condition was satisfied before the decedent's death without there having been a revocation of the transaction. Any discussion of the contention that Neal was the decedent's agent rather than an agent of the bank is unwarranted and wholly unnecessary.

BRODKEY and WHITE, C. THOMAS, JJ., join in this concurrence.