NANCY HELLER LEWIS, PERSONAL REPRESENTATIVE OF THE ESTATE OF CLIFFORD MILTON HELLER, DECEASED, ET AL., APPELLEES, V. JAMES D. PODUSKA, APPELLANT, AND ALL PERSONS HAVING OR CLAIMING ANY INTEREST IN LOT 37, BLOCK 8, ORCHARD HILL ADDITION TO THE CITY OF OMAHA, DOUGLAS COUNTY, NEBRASKA, APPELLEES.

481 N.W.2d 898

Filed March 27, 1992.   No. S-89-816.

Jeffrey A. Silver for appellant.

Dean J. Sitzmann, of Steier & Kreikemeier, P.C., for appellees Lewis and Heller.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendant James D. Poduska appeals a judgment of the district court which quieted title to certain real estate in the plaintiff Nancy Heller Lewis and awarded damages in favor of the plaintiffs in the amount of $29,802.02. Defendant Poduska assigns as error generally that the trial court imposed a resulting trust upon Poduska in favor of the plaintiffs and rejected Poduska's theory of a gift.

Plaintiff Lewis is the daughter, sole heir at law, and personal representative of the estate of Clifford Milton Heller, deceased. Plaintiff Alfreda M. Heller is Lewis' mother and Clifford's ex-wife. Clifford and Alfreda jointly owned and managed rental properties in Omaha. They continued this venture even

after the dissolution of their marriage in 1981.

Poduska was Clifford's nephew. He is the record title owner of Lot 37, Block 8, Orchard Hill Addition, known as 3815 Franklin Street in Omaha.

In 1974, Clifford and Alfreda bought the property located at 3815 Franklin. They did not take title to the property; rather, title was conveyed to Poduska. Alfreda herself recorded the deed conveying title to Poduska.

The purpose of conveying the property to Poduska was to allow Clifford, a licensed real estate agent, to collect a commission from the sellers. Clifford and Alfreda completed at least two, and possibly as many as six, transactions of this kind involving Poduska. Poduska would receive title to the property and would then reconvey it to Clifford and Alfreda upon request. On all other occasions, Poduska had reconveyed the property when asked by Clifford to do so. Poduska never reconveyed title to 3815 Franklin to Clifford and Alfreda. In 1980, Alfreda prepared a deed conveying the property from Poduska to her and Clifford. She gave this deed to Clifford when she prepared it. Alfreda next saw the deed, unexecuted, on Clifford's desk in 1981. Clifford died on September 1, 1986. The deed was still on Clifford's desk and unexecuted when he died.

At all times between the purchase of 3815 Franklin and Clifford's death, Clifford and Alfreda treated the property as their own. From 1974 to 1986, they used it for storage, by and large letting it sit idle. After 1980, Clifford and Alfreda began improving the property, eventually spending $21,628 to that end. Clifford and Alfreda paid property taxes and insurance premiums on the property and after 1980 claimed it on their income tax returns. They began renting the property shortly before Clifford's death in 1986. When Clifford and Alfreda secured a decree of dissolution of their marriage, the property was listed in the decree as a marital asset and was awarded to Clifford.

Poduska did not take possession of the property until after Clifford's death. Poduska acquired a copy of the deed to the property at the county courthouse following Clifford's death. After that time he began collecting rent from the tenant living

on the property, paying insurance premiums, and paying property taxes.

Poduska testified that he understood it to be Clifford's intent that he (Poduska) was to have 3815 Franklin when Clifford died. According to Poduska, "[Clifford] told me he has a house that he's going to give me and that I was supposed to take up with the house when he passes away." Clifford told Poduska this at Clifford's home in 1974, shortly after the purchase of the property. Poduska testified that Alfreda was present when the statement was made. He also testified that Clifford reminded him of this promise to give him the property on a number of subsequent occasions.

Clifford also talked about 3815 Franklin with Poduska's wife, Rebecca Poduska, and with Poduska's mother, Betty Poduska. Rebecca Poduska testified that in 1976 Clifford asked her if she knew her husband had a house in Omaha. She also testified that in 1982, Clifford told her he had been working on Poduska's house. Betty Poduska testified that on six or seven occasions, the last being in June 1986, Clifford had told her that her son "owns a house in Omaha."

Clifford's own fiancee, Charmayne Gaye, testified that while reviewing documents in preparing to sign a prenuptial agreement, she saw a reference to 3815 Franklin with Poduska's name handwritten in the adjacent margin. On another occasion, Clifford told her that Poduska was aware that the property was in his name, adding, "[W]hat the hell does he care . . . if I die he's got himself a house." On a third occasion, while visiting 3815 Franklin, Clifford again told her that the property was in Poduska's name and that if something happened to him (Clifford), the property would go to Poduska.

In contrast to the above statements, however, Lewis testified that Clifford once told her that 3815 Franklin would someday be hers.

Poduska further testified that Clifford visited Poduska at Poduska's home in Iowa in June 1986, shortly before he died. Clifford did not at that time, nor at any other time, direct Poduska to deed 3815 Franklin to him and/or Alfreda. In the other instances where Poduska took title to property for the Hellers, according to Alfreda's testimony, "Cliff would put

[the deed] underneath [Poduska's] nose and say, here, Jim, sign this, and Jim did without reading it or anything."

The district court tried the case upon the plaintiffs' amended petition, which listed three "causes of action" based upon the above-stated facts: to quiet title, for return of wrongfully collected rents, and for unjust enrichment. At this point, mention should be made of the fact that there were not three causes of action alleged. All three *theories of recovery* were based on one set of facts. " '[A] cause of action consists of the set of facts on which a recovery may be had.' " *Lewis v. Craig*, 236 Neb. 602, 605, 463 N.W.2d 318, 320 (1990).

In any event, the court determined that the plaintiffs had proved the existence of a resulting trust, and granted them leave to file a second amended petition to conform to the proof. The court then entered its decree, which (1) gave Lewis, as personal representative, fee simple title to 3815 Franklin; (2) ordered Poduska to pay to Lewis, as personal representative, the proceeds from a fire insurance policy covering the property; (3) entered judgment against Poduska in the amount of the rents he had collected from tenants at 3815 Franklin; and (4) taxed to Poduska court costs and postjudgment interest.

If, as claimed by the plaintiffs, Clifford intended that Poduska hold the property in trust for him, Clifford violated Neb. Rev. Stat. § 81-885.24(9) (Cum. Supp. 1974), which prohibited a licensed real estate broker from "[a]cting in the dual capacity of agent and undisclosed principal in any transaction," and § 81-885.24(27), which prohibited conduct "[d]emonstrating unworthiness or incompetency to act as a broker, associate broker, or salesman, whether of the same or of a different character as hereinbefore specified." It is apparent that the true purpose of the structure of the various transactions involving Poduska, including the case at bar, was to work a fraud, in violation of the real estate broker licensing statutes, upon the sellers of the properties by collecting an illegal commission by subterfuge.

Conveyances made for fraudulent purposes fall within an exception to the Restatement rule regarding purchase money trusts.

Where a transfer of property is made to one person and

another pays the purchase price in order to accomplish an illegal purpose, a resulting trust does not arise if the policy against unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction.

Restatement (Second) of Trusts § 444 at 405 (1959).

Regardless of the question of fraud, Poduska argues that imposition of a resulting trust was error in that the evidence was at least equally consistent with the theory that Clifford intended to make Poduska a gift of 3815 Franklin. He cites in support *Biggerstaff v. Ostrand*, 199 Neb. 808, 261 N.W.2d 750 (1978). *Biggerstaff* does indeed state, "Where the alleged trust relationship is just as consistent with that of a gift or loan, courts will not ordinarily impress a resulting trust." *Id.* at 816, 261 N.W.2d at 754. This is a natural corollary of the general definition of a resulting trust: A resulting trust arises to give effect to the relationship *intended* by the parties thereto. See *Superior Hybrids Co. v. Carmichael*, 214 Neb. 384, 333 N.W.2d 911 (1983). A similar corollary obtains in the specific case of a purchase money resulting trust: "A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise." Restatement (Second) of Trusts § 441 at 396-97 (1959). We are thus presented with the question as to whether a preponderance of the evidence, reviewed de novo, indicates that 3815 Franklin was a gift from Clifford to Poduska.

"The essential elements of a gift inter vivos are donative intent, delivery, and acceptance." *Renner v. Wurdeman*, 231 Neb. 8, 13-14, 434 N.W.2d 536, 540 (1989); *Guardian State Bank & Trust Co. v. Jacobson*, 220 Neb. 235, 369 N.W.2d 80 (1985). We discuss these elements in order.

## DONATIVE INTENT

Poduska testified that "[Clifford] told me he has a house that he's going to give me and that I was supposed to take up with the house when he passes away." This statement was made at Clifford's home shortly after the purchase of the property, in

Alfreda's presence, and was repeated in essence on a number of later occasions.

The district court viewed this evidence as insufficient to establish a gift, observing, "There were never any witnesses to these statements," apparently meaning witnesses other than Poduska.

However, other witnesses testified to statements by Clifford of the same nature as those testified to by Poduska. Rebecca Poduska testified that in 1976, Clifford asked her if she knew her husband had a house in Omaha. She testified that in 1982, Clifford told her he had been working on Poduska's house. Betty Poduska testified that on six or seven occasions, the last being in June 1986, Clifford had told her that her son "owns a house in Omaha." Clifford told his fiancee, Gaye, that Poduska was aware that the property was in his name, adding, "[W]hat the hell does he care . . . if I die he's got himself a house." Clifford also told Gaye, while visiting 3815 Franklin, that the property was in Poduska's name and that if something happened to him (Clifford), the property would go to Poduska.

The trial court found that these corroborative statements were made "in no particular context"; Lewis and Alfreda similarly argue that the statements were not "specific as to the exact house or property" being given. Brief for appellees Lewis and Heller at 19. However, that ignores the fact that during this period of time only the one house was titled in Poduska's name.

Clifford's statements were made against a background indicating that he intended something other than a resulting trust. In the other instances where Poduska took title to property for the Hellers, Clifford facilitated the reconveyance of the property to him and Alfreda: "Cliff would put [the deed] underneath [Poduska's] nose and say, here, Jim, sign this, and Jim did without reading it or anything." However, in the instance of 3815 Franklin, Clifford let the deed reconveying the property from Poduska to himself and Alfreda sit on his desk for 6 years without requesting Poduska's signature. He did this even though he was aware, based on the statements recounted above, that Poduska held title to the property, and even though he saw Poduska on several occasions, including one only 2 months before he died.

Lewis and Alfreda argue that Clifford's intent was not to make a gift, but to consummate the kind of sham transaction he had involved Poduska in on previous occasions. While this may have been Clifford's intent at the time of the original conveyance, Clifford's later statements and actions make it clear that his intent changed. If he intended himself to be the beneficial owner of 3815 Franklin, his statements that the property belonged to Poduska, and his failure for over 12 years to have Poduska reconvey the property, are inconsistent with that intent. The evidence is sufficient to indicate that Clifford intended the property as a gift to Poduska, with possession to be taken after Clifford's death.

## DELIVERY

" ' "Once it is ascertained that it was the intention of the donor to make a gift inter vivos of an undivided interest in a chattel or chose in action, and all is done under the circumstances which is possible in the matter of delivery, the gift will be sustained. . . ." ' " *Guardian State Bank & Trust Co.*, 220 Neb. at 239, 369 N.W.2d at 83-84 (quoting *In re Estate of Saathoff. Saathoff v. Saathoff*, 206 Neb. 793, 295 N.W.2d 290 (1980)). " '[T]he delivery may be symbolical or constructive if as nearly perfect and complete as the nature of the property and the attendant circumstances will permit.' " *Rorabaugh v. Garvis*, 198 Neb. 223, 226, 252 N.W.2d 161, 163 (1977) (quoting *Crowell v. Milligan*, 157 Neb. 127, 59 N.W.2d 346 (1953)). Thus, it appears, the circumstances surrounding the giving of an alleged gift control what is necessary in order to effectuate delivery.

Two circumstances are vital to the analysis of delivery in this case. The first is that Clifford intended Poduska to take actual possession of the Franklin Street property— "to take up with the house"— only after Clifford died. This makes passage of actual possession of the property during Clifford's lifetime unnecessary to sustain the gift. The second is the fact that Poduska was, at the time of the gift, the title owner of the property. This makes delivery of the deed unnecessary to sustain the gift.

Poduska took possession of the Franklin Street property by

collecting rents, paying insurance premiums, and paying property taxes after Clifford's death. This is consistent with the circumstance of Clifford's intent that Poduska "take up with the house when he [Clifford] passes away." Moreover, Alfreda herself recorded the deed in Poduska's name. Even if we assume Clifford and Alfreda's intent was, at the time of recording of the deed, that they consummate one of their customary transactions with Poduska by having him reconvey the property to them, Clifford's knowledge that the deed was in Poduska's name and Clifford's subsequent inaction in the face of this fact could reasonably be construed as delivery of title to the property.

Lewis and Alfreda argue that "the delay in requesting [Poduska] to convey the property was due solely to inadvertence." Brief for appellees Lewis and Heller at 24. This is both misleading and ludicrous. The record does not reflect that there was *ever* a request that Poduska reconvey the property. Moreover, it is beyond belief that Clifford, who was in the business of buying and managing real estate, would "inadvertently" fail to have Poduska reconvey the property for over 12 years. The fact that Clifford had a completed deed awaiting Poduska's signature on his desk for over 6 years further strains the credibility of Lewis and Alfreda's argument in this regard.

Plaintiffs further argue, "The retaining of any control in the hands of the donor over the subject of the gift renders it invalid," *id*. at 20, citing *Jones v. Ewart*, 143 Neb. 717, 10 N.W.2d 708 (1943), for this proposition. Furthermore, they suggest that since Poduska was to "take up on" the property at Clifford's death, brief for appellees Lewis and Heller at 21, the alleged gift was really a bequest, invalid under the law of wills. These arguments are controlled by *Dinslage v. Stratman*, 105 Neb. 274, 180 N.W. 81 (1920). In that case, the plaintiff's decedent gave her granddaughter $1,000, payable when the grandmother died. The decedent held a debt of the defendant, whom she directed to pay $1,000—in satisfaction of the debt—to the granddaughter upon the decedent's death. The plaintiff administrator, upon decedent's death, sued the defendant for the debt, arguing that the gift was conditional

and therefore the debt had reverted to the decedent's estate. The court held that the gift had vested and that the defendant was to pay the $1,000 to the granddaughter, rather than to the decedent's estate. The court said, " 'If the gift is absolute, the mere postponement of the enjoyment of it until the death of the donor is not material, and will not defeat it.' " *Id.* at 280, 180 N.W. at 83.

Clifford intended that 3815 Franklin be a gift to Poduska, the enjoyment of which was deferred until Clifford's death. Clifford placed no conditions on his gift to Poduska. When we assume that the evidence discussed above was sufficient to establish intent, Clifford's inaction in allowing the title to the house to remain in Poduska was sufficient delivery under the circumstances of the gift.

## ACCEPTANCE

Poduska accepted the gift by taking possession of it after Clifford's death in accordance with Clifford's intent, as demonstrated by the evidence. Plaintiffs argue that Poduska did not accept the gift when he first became aware of it, and therefore his acceptance is invalid. Once again, plaintiffs misunderstand the nature of the gift. Poduska's possession of the property was to be delayed until after Clifford's death. When Clifford died, Poduska took possession of the property and assumed the responsibilities attached to that possession. Those actions were sufficient to constitute acceptance of the gift.

Our finding that the property constituted a gift from Clifford to Poduska, vesting in Poduska upon Clifford's death, of necessity disposes of the trust theories Lewis and Alfreda urged both in this court and in the trial court. See, *Superior Hybrids Co. v. Carmichael*, 214 Neb. 384, 333 N.W.2d 911 (1983); Restatement (Second) of Trusts § 441 (1959). Lewis and Alfreda also urged a theory of adverse possession, which is no more applicable upon the facts of this case than the trust theories. "One who claims title by adverse possession must prove by a preponderance of the evidence that he or she has been in actual, continuous, exclusive, notorious, and adverse possession under a claim of ownership for the full 10-year

statutory period." *Schaneman v. Wright*, 238 Neb. 309, 323, 470 N.W.2d 566, 576 (1991). When we consider the evidence of Clifford's donative intent, it is clear that his claim of ownership, if any, extended only until his death. In other words, the claim was not of fee simple ownership, but one in the nature of a life estate. The district court properly found that adverse possession had not been established.

The evidence having established that the district court erred in impressing a trust upon the property, awarding title to Lewis, and awarding damages against Poduska, the judgment is reversed and the cause remanded with directions to enter judgment in favor of the defendant Poduska.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., concurs.