IN RE ESTATE OF EDWARD LAMPLAUGH, DECEASED.
DEBORAH CARTER, APPELLEE, V. CHARLES PERCY, SUCCESSOR
PERSONAL REPRESENTATIVE OF THE ESTATE OF EDWARD
LAMPLAUGH, DECEASED, APPELLANT.

708 N.W.2d 645

Filed January 20, 2006.   No. S-04-959.

Michael L. Nozicka, of Baskins, Pederson & Troshnyski, for appellant.

James J. Paloucek, of Norman, Paloucek & Herman Law Offices, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

After the death of Edward Lamplaugh, Deborah Carter deposited two checks written to her on Lamplaugh's account at Adams Bank & Trust (the Bank). Upon learning of

Lamplaugh's death and contacting the pay-on-death beneficiary of Lamplaugh's account, the Bank reversed the transaction and placed a hold on Lamplaugh's account. Carter filed a claim against the estate of Lamplaugh for the amount of the checks, and the county court granted the claim in full. The successor personal representative of the estate appeals the judgment of the county court. For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

During the 10 years prior to Lamplaugh's death, Carter performed housekeeping and other household duties for him. Among other tasks, Carter paid Lamplaugh's bills, cleaned his home, dispensed his medicine, mowed his yard, did his laundry, took him on errands, and accompanied him to the doctor. On the morning of June 10, 2002, Carter arrived at Lamplaugh's home and discovered Lamplaugh on the floor, deceased. Carter notified the authorities and traveled to the hospital, where Lamplaugh was pronounced dead. When Carter left the hospital, she stopped at the Bank to deposit two checks written to her on Lamplaugh's account. One check, dated June 6, 2002, was in the amount of $50 for cleaning services Carter had performed the previous week. The other check, dated June 9, 2002, was in the amount of $80,000. According to Carter, Lamplaugh gave her the check to enable her to buy a liquor store located in North Platte that was for sale at the time of Lamplaugh's death.

When Carter returned to Lamplaugh's home after depositing the checks into her account, an employee of the Bank called the residence to speak with Lamplaugh. After learning of Lamplaugh's death and subsequently contacting Lamplaugh's sister, the pay-on-death beneficiary of the account, the Bank reversed the transaction, placed a hold on the account, and notified Carter accordingly. Carter was never able to gain access to the funds.

Lamplaugh's sister was appointed as personal representative of Lamplaugh's estate. After her health deteriorated, Charles Percy was appointed as successor personal representative (hereinafter personal representative).

Carter filed a petition for allowance of claim against the estate for $80,098, including the amount of the two checks and

an additional $48 that Carter spent to change the locks at Lamplaugh's home on the day he died. The amended inventory of Lamplaugh's estate shows under schedule F (as personal property) the disputed $80,000 which is being held in the Bank and under schedule C (as cash) the remaining amount contained in Lamplaugh's checking account with Lamplaugh's sister as the pay-on-death beneficiary. A trial was held, and the county court granted Carter's claim. No fraud had been alleged by the estate, and the court found that Carter acted out of "genuine fondness or love" for Lamplaugh and found no evidence of fraudulent intent or action on Carter's part. The court concluded that the check showed sufficient indicia of donative intent to be a valid gift and rejected the personal representative's argument that Lamplaugh's death before redemption of the check nullified the gift. The court also granted payment of $50 for Carter's cleaning services and $48 expended in changing the locks at Lamplaugh's residence, and those findings are not at issue here.

The personal representative appealed the judgment of the county court.

## ASSIGNMENTS OF ERROR

The personal representative assigns, summarized and restated, that the county court erred in (1) finding donative intent on the part of Lamplaugh in transferring the $80,000 check to Carter, (2) finding effective delivery of the purported gift, and (3) failing to find that the purported gift was revoked by Lamplaugh's death.

The personal representative also assigns but does not argue that the county court erred in (1) finding acceptance of the purported gift by Carter and (2) awarding Carter the full value of her claim. Errors that are assigned but not argued will not be addressed by an appellate court. *Genthon v. Kratville, ante* p. 74, 701 N.W.2d 334 (2005).

## STANDARD OF REVIEW

■■■ Appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 1995 & Cum. Supp. 2004), are reviewed for error on the record. *In re Estate of Rosso, ante* p. 323, 701 N.W.2d 355 (2005). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported

by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ An appeal from the county court's allowance or disallowance of a claim in probate will be heard as an appeal from an action at law. See *In re Estate of Matteson*, 267 Neb. 497, 675 N.W.2d 366 (2004). In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. See *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002). The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. See *id.* On a question of law, however, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## ANALYSIS

■ The personal representative assigns that the county court erred in finding the $80,000 check to be a valid gift from Lamplaugh to Carter. To make a valid and effective gift inter vivos, there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee. *Guardian State Bank & Trust Co. v. Jacobson*, 220 Neb. 235, 369 N.W.2d 80 (1985). The personal representative first challenges the county court's finding of donative intent, arguing that the court was presented with conflicting evidence as to Lamplaugh's intent in giving the check to Carter and that, thus, Carter failed to prove the requisite donative intent. The personal representative also argues that Carter failed to prove that Lamplaugh effectively delivered the $80,000 to Carter. As a result, the personal representative asserts that the gift was incomplete and, consequently, revoked upon Lamplaugh's death.

*Sufficient Evidence Was Presented at Trial to Support County Court's Finding of Donative Intent.*

■ One of the essential elements of a gift is the intention to make it. *Masonic Temple Craft v. Stamm*, 152 Neb. 604, 42 N.W.2d 178 (1950). A clear and unmistakable intention on the

part of the donor to make a gift of his or her property is an essential element of the gift, and this contention must be inconsistent with any other theory. *Id.*

The personal representative argues that Carter did not present clear evidence at trial to show that Lamplaugh intended to make a gift of $80,000 to Carter. Carter argues that the county court's finding of donative intent was supported by competent evidence, and based on the evidence offered at trial and the applicable standard of review, we agree.

At trial, Carter testified that on many occasions, Lamplaugh expressed a desire that Carter have all his money upon his death. Carter testified that Lamplaugh gave her money as gifts, paid her sick leave, paid for her "car tags," and expressed his desire to take care of her. Carter testified that she and Lamplaugh discussed the purchase of the liquor store on multiple occasions and that Lamplaugh offered to assist her with the investment.

Carter described the usual process in which she would assist Lamplaugh in paying his bills—filling out the checks according to his instructions for him to then review and sign, one at a time. Carter testified that the same process was used at the time Lamplaugh signed the $80,000 check at issue. She testified that after spending the day cleaning and doing laundry at Lamplaugh's residence on June 9, 2002, Lamplaugh told her that she "needed to slow down and take time and get that — that liquor store bought." Carter testified that Lamplaugh instructed her to write "to pay bills" on the "memo" line of the check, explaining that it was not his family's business how he spent his money. Further, Carter testified that Lamplaugh did not mention anything about repayment terms and that she understood the check to be a gift from him. At the end of the evening, Carter placed the check in her purse and went home, after making arrangements to stop at Lamplaugh's residence the following morning.

Debby Baker, Carter's close friend and former employer, also testified at trial. Baker testified that due to Carter's multiple jobs and hectic schedule, Baker served as an answering service for Carter and kept track of her whereabouts in case anyone needed to reach her. Baker testified that she spoke to Lamplaugh on the telephone on multiple occasions while Carter was working for

him. Baker explained that on the day before Lamplaugh's death, she called Lamplaugh's residence to speak to Carter. Lamplaugh answered the telephone, explained that Carter was busy cleaning, and expressed to Baker his desire to give Carter a check for $80,000. Lamplaugh told Baker that he hoped owning her own business would allow Carter to spend more time assisting him. Baker testified that Lamplaugh had also expressed his intent to give Carter the check on a prior occasion.

Finally, the deposition of Janet Spencer, a former business development officer and personal banker at the Bank, was received into evidence at trial. Spencer testified that she first met Lamplaugh when he came to the Bank, along with Carter, to open a personal checking account. Spencer was already acquainted with Carter at that time, having served as her banker. In discussing with Lamplaugh the ways in which to title the new account, Spencer testified that Lamplaugh wanted Carter on the account. Spencer testified that when Carter discouraged the idea, Lamplaugh told Spencer that he wanted Carter to have all of his money and that, although he kept asking her to marry him, she repeatedly declined. Carter acknowledged Lamplaugh's marriage proposals during her testimony but described Lamplaugh's substantial role in her life as more like a father-daughter relationship.

In her deposition, Spencer stated that, ultimately, Lamplaugh agreed to place his sister on the account. Spencer testified about other occasions in which Lamplaugh would visit the Bank. During such visits, Lamplaugh was very vocal about his appreciation for Carter and the assistance she provided to him and, on approximately six occasions, expressed his desire that Carter have his money upon his death.

The evidence offered by Carter is sufficient to support the county court's conclusion that Lamplaugh intended the check to be a gift to Carter, and the estate offered no contradictory evidence. When considering the evidence in the light most favorable to Carter, the county court's factual finding of donative intent on the part of Lamplaugh is neither arbitrary nor unreasonable and is supported by competent evidence. The personal representative's first assignment of error is without merit.

*Delivery of Gift of $80,000 Was Accomplished by Operation of Law at Time of Lamplaugh's Death.*

■ Once it is ascertained that it was the intention of the donor to make a gift inter vivos of an undivided interest in a chattel or chose in action, and all is done under the circumstances which is possible in the matter of delivery, the gift will be sustained. *Lewis v. Poduska*, 240 Neb. 312, 481 N.W.2d 898 (1992). Ordinarily, actual delivery is necessary where the subject of the gift is capable of manual delivery, but where actual manual delivery cannot be made, the donor may do that which, under the circumstances, will in reason be considered equivalent to actual delivery. *Guardian State Bank & Trust Co. v. Jacobson*, 220 Neb. 235, 369 N.W.2d 80 (1985).

In the present case, the personal representative asserts that delivery of the purported gift was not accomplished by Lamplaugh's transfer of the check to Carter, because a check is not itself a transfer of funds. Rather, the personal representative argues that delivery of the amount of the check is not effectuated until it is cashed or deposited, placing the funds beyond the dominion and control of the donor. Furthermore, the personal representative argues that Carter's failure to cash the $80,000 check prior to Lamplaugh's death rendered the gift incomplete and that as a result, the gift was automatically revoked upon Lamplaugh's death.

In support of his position, the personal representative cites *Matter of Estate of Bolton*, 444 N.W.2d 482 (Iowa 1989). In *Matter of Estate of Bolton*, 444 N.W.2d at 483, the Iowa Supreme Court discussed the general rule with respect to gifts by check, as recognized in Iowa:

> "[T]he donor's check, prior to acceptance or payment by the bank, is not the subject of a valid gift either inter vivos or causa mortis. . . . The difficulty with respect to a gift of the donor's check . . . is that mere delivery of the check to the donee or to some other person for him does not place the gift beyond the donor's power of revocation, prior to payment or acceptance. Moreover, there is the further consideration . . . that the death of the drawer works a revocation of the check, so that where the check is intended as a gift causa mortis and the donor dies before payment or

acceptance, the death revokes the gift. Thus, the death of the drawer effects a revocation of the alleged gift of a check not presented for payment until after such death . . . ." (Quoting 38 Am. Jur. 2d *Gifts* § 65 (1968).) Based on these principles, the personal representative asserts that Lamplaugh's death revoked the purported gift to Carter.

In contrast, Carter argues that Lamplaugh's transfer of the check itself was sufficient to accomplish delivery of the gift prior to Lamplaugh's death. Carter asserts that delivery is accomplished when all that can be done to effectuate delivery under the circumstances is done; Carter argues that Lamplaugh's transfer of the check on the evening before his death was sufficient to complete delivery under that standard. Furthermore, Carter asserts that even jurisdictions that take the position urged by the personal representative recognize an exception in which the transfer of a check constitutes constructive delivery of the funds where (1) the donor's intent is clear, (2) creditors are not prejudiced, (3) no fraud or undue influence is at issue, and (4) the check is not cashed prior to the donor's death due to circumstances beyond the control of the donor and donee. See, e.g., *Sinclair v. Fleischman*, 54 Wash. App. 204, 773 P.2d 101 (1989). Such an exception, Carter argues, would apply in the present case.

But the parties fail to cite § 30-2723(d), which states in part that

> [t]he ownership right of a surviving party or beneficiary, or of the decedent's estate, in sums on deposit is subject to requests for payment made by a party before the party's death, whether paid by the financial institution before or after death, or unpaid. The surviving party or beneficiary, or the decedent's estate, is liable to the payee of an unpaid request for payment.

The comments accompanying article VI of the Uniform Probate Code, upon which § 30-2723(d) is based, discuss the effect of amendments made to article VI, stating, in part, "[t]he changes include recognition of checks issued by an account owner before death and presented for payment after death . . . ." Prefatory Note, Unif. Probate Code, 8 U.L.A. 426 (1998). Such a rule is a departure from common-law rules pertaining to gift and agency law providing that a drawee bank must honor a check before the

donor's death. See Ronald R. Volkmer, *Legislative Bill 250: The New Nonprobate Transfers Article of the Nebraska Probate Code*, 27 Creighton L. Rev. 239 (1993). See, also, William M. McGovern, Jr., *Nonprobate Transfers Under the Revised Uniform Probate Code*, 55 Alb. L. Rev. 1329 (1992).

The plain language of § 30-2723(d) does not distinguish between checks intended as gifts, checks transferred in satisfaction of debts, or otherwise. Rather, the statute requires, without limitation, that unpaid checks written on a party's account before the party's death be paid by the beneficiary of the sums on deposit in the decedent's account.

Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Tyson Fresh Meats v. State, ante* p. 535, 704 N.W.2d 788 (2005). Here, the Legislature made a clear policy decision to enact statutory language that supplants any common-law rules regarding presentment of checks after the death of the drafter. Thus, although the parties focus their arguments on the question whether delivery of a gift by check is complete at the time the check is transferred or, alternatively, at the time the check is cashed or deposited, we conclude that regardless of whatever common-law rule would have been applicable, the gift was completed by operation of law upon Lamplaugh's death pursuant to § 30-2723(d).

Pursuant to § 30-2723(d), the check given to Carter under the circumstances became irrevocable upon Lamplaugh's death, and the check remains payable by Lamplaugh's estate from the funds being held in the Bank. Such a result is consistent with the requirements for a valid gift—the donor's dominion and control of the funds represented by the check are surrendered upon the donor's death, and delivery is thereby completed.

We conclude that Lamplaugh's gift of $80,000 was complete upon his death and is payable pursuant to § 30-2723(d). Although, upon our independent review on this question of law, our reasoning differs from that of the county court, the court did not err in finding the check was payable. Where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason

different from that assigned by the trial court, an appellate court will affirm. *Troshynski v. Nebraska State Bd. of Pub. Accountancy, ante* p. 347, 701 N.W.2d 379 (2005).

## CONCLUSION

Having reviewed the proceedings for error on the record, we conclude that sufficient evidence was presented at trial to support the county court's finding of donative intent on the part of Lamplaugh. In addition, delivery of the gift was accomplished, at the latest, at the time of Lamplaugh's death. Under § 30-2723(d), Lamplaugh's estate is liable to Carter for the amount of the check. The county court's decision conforms to the law and is supported by competent evidence. The remainder of the claim against the estate is not at issue on appeal; we, therefore, affirm the judgment of the county court.

AFFIRMED.