Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/01/2016 09:10 AM CDT

- 359 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

In re Trust Created by Phyllis L. Haberman.
George Haberman, appellant, v. Mary Lou
Haberman et al., appellees.

___ N.W.2d ___

Filed November 1, 2016.    No. A-15-811.

1. **Trusts: Equity: Appeal and Error.** Absent an equity question, an
   appellate court reviews trust administration matters for error appear-
   ing on the record; but where an equity question is presented, appellate
   review of that issue is de novo on the record.
2. **Trusts.** Under Neb. Rev. Stat. § 30-3855(a) (Cum. Supp. 2014), while a
   trust is revocable, rights of the beneficiaries are subject to the control of
   the settlor.
3. ____. The settlor of a written revocable trust may revoke or amend the
   trust by substantial compliance with a method provided in the terms of
   the trust.
4. ____. The amendment of a revocable trust terminating a beneficiary's
   interest in the trust property invalidates any earlier agreements that the
   beneficiary may have entered into with respect to the beneficiary's inter-
   est in the trust corpus.
5. **Judgments: Appeal and Error.** Where the record adequately demon-
   strates that the decision of the trial court is correct, although such cor-
   rectness is based on a ground or reason different from that assigned by
   the trial court, an appellate court will affirm.
6. **Appeal and Error.** An appellate court is not obligated to engage in an
   analysis that is not necessary to adjudicate the case and controversy
   before it.

Appeal from the County Court for Adams County: Robert
A. Ide, Judge, Retired. Affirmed.

David V. Drew, of Drew Law Firm, P.C., L.L.O., for
appellant.

- 360 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

Daniel E. Klaus, Rembolt Ludtke, L.L.P., for appellees.

Moore, Chief Judge, and Inbody and Pirtle, Judges.

Per Curiam.

## INTRODUCTION

This case concerns the disposition of the property contained in the Phyllis L. Haberman Revocable Trust following the death of the trust's settlor, Phyllis L. Haberman. George Haberman, one of Phyllis' sons, contends that he is entitled to a portion of the trust property despite an amendment to the trust excluding George as a beneficiary. George argues that an earlier agreement between himself, the trust, and his siblings—Phillip Haberman, Rex S. Haberman II, and Mary Lou Haberman—should govern the current disposition of the trust corpus. Upon our review, we affirm the county court's decision holding that George is not entitled to a portion of the trust property.

## BACKGROUND

Phyllis created the revocable trust at issue in this case in 1996. The trust corpus consisted primarily of land interests held by the family company, R and P Limited Partnership (R and P), and additional property which was separately owned by Phyllis and her spouse.

The 1996 trust agreement named as its beneficiaries Phyllis; Phyllis' four children—George, Phillip, Rex, and Mary Lou; and Phyllis' husband who predeceased her and who is not a part of the present dispute. The trust provided that upon the death of Phyllis and her spouse, George, Phillip, and Mary Lou would each receive equal shares of R and P, and Rex would receive parcels of real estate located in Kimball County, Nebraska. Any remaining trust assets were to be equally divided among the four siblings.

The declaration of trust document also provided that the trust could be amended or revoked as follows:

> GRANTOR specifically reserves the following rights during [her] lifetime:

- 361 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

. . . To remove the TRUSTEE and appoint a successor and to modify or alter this Declaration of Trust in whole or in part by an instrument in writing signed by GRANTOR and delivered to the TRUSTEE or to revoke this trust agreement in whole or in part by similar writing . . . .

It appears that following the creation of the trust, Phyllis initially made two different amendments to the trust. These first two amendments do not appear in the record before us and are not at issue in this appeal.

In 2005, following an incident in which Phyllis attempted suicide, Mary Lou was appointed as the guardian and conservator for Phyllis. Mary Lou testified that the conservatorship was terminated in August 2007. It appears that the guardianship lasted until Phyllis' death.

On February 17, 2006, R and P was merged into a newly created company, Roses and Wheat, L.L.C. At trial, the attorney who represented Phyllis, her husband, and the family's business entities testified that he recommended the merger of R and P into Roses and Wheat because the limited liability corporation provided a better format to administer the business. Roses and Wheat acquired all the assets previously held by R and P. Phyllis' trust, Phyllis' husband's trust, and the four siblings were listed as Roses and Wheat's managers.

Also on February 17, 2006, various members of the Haberman family executed a document entitled "Agreement Among Parties," which George now contends governs the disposition of the trust property. The agreement among parties stated that it was made by and between Roses and Wheat, Phyllis' husband's trust, the four siblings, and "the Phyllis L. Haberman Revocable Trust, Phyllis Haberman, Trustee (by Mary Lou Haberman)." The agreement among parties stated, in relevant part, as follows:

WHEREAS, upon the death of Phyllis L. Haberman, three of her children, namely Mary Lou Haberman, George Haberman, and Phillip Haberman, are to receive

- 362 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

equal interests in ROSES AND WHEAT, L.L.C. representing approximately seventy five percent (75%) of the value of the real estate held by [Phyllis' trust and her spouse's trust]. Phyllis L. Haberman's other child, Rex Haberman II, upon the death of Phyllis L. Haberman, is to receive a specific bequest of land held by [Phyllis' trust and her spouse's trust]. Land to be received by Rex Haberman II represents approximately twenty-five percent (25%) of the value of the real estate held by [Phyllis' trust and her spouse's trust].

WHEREAS, the parties to this instrument desire an orderly distribution of the real estate upon the death of Phyllis L. Haberman.

WHEREAS, the parties desire that upon the death of Phyllis L. Haberman, that instead of Rex Haberman II receiving a specific bequest of land from [Phyllis' trust and her spouse's trust], that the land he is to receive be transferred to ROSES AND WHEAT, L.L.C. during Phyllis L. Haberman's life and that upon Phyllis L. Haberman's death, Rex Haberman II receive a twenty-five [percent] (25%) ownership interest in ROSES AND WHEAT, L.L.C. rather than receive his specific bequest.

THEREFORE, IT IS HEREBY AGREED BY THE PARTIES:

1. That the parcels of land specifically devised to Rex Haberman, II under [Phyllis' trust and her spouse's trust] be transferred to Roses and Wheat, LLC, during the life of Phyllis L. Haberman.

2. That in consideration of the transfer in paragraph (1), Rex Haberman, II shall receive a twenty-five percent (25%) ownership interest in Roses and Wheat, L.L.C., upon the death of Phyllis L. Haberman. This 25% ownership interest is to be received in lieu of the specific devises Rex Haberman, II was to receive under [Phyllis' trust and her spouse's trust].

- 363 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

3. That after the death of Phyllis L. Haberman and the settlement of her estate, the ownership interests of Roses and Wheat, LLC, shall be as follows:

25% Mary Lou Haberman
25% George C. Haberman
25% Phil[l]ip J. Haberman
25% Rex S. Haberman II

The agreement was signed by the four siblings individually and by Mary Lou as "Guardian and Conservator of Phyllis."

On October 30, 2006, Phyllis executed a third amendment to her trust. By this time, the property that had been held outside of R and P had been transferred to Roses and Wheat such that Roses and Wheat held all of Phyllis and her spouse's real estate interests. The third amendment provided that upon Phyllis' death, Phyllis' membership interest in Roses and Wheat was to be distributed equally to each of her four children so that each of them would acquire a 25-percent interest in Roses and Wheat.

Starting in late 2006, there began to be increasing tension between George and his family. At the time, George had been working for Phillip, but claimed that Phillip had not paid him. George filed a complaint with Wyoming's department of labor against Phillip. During the dispute with Phillip, George misrepresented to his family that he had received calls from the Internal Revenue Service regarding Phillip's business practices. George eventually withdrew the labor complaint against Phillip.

George also became involved in a dispute with the family's farm manager regarding an unreported oil spill on property owned by Roses and Wheat. George reported Roses and Wheat to the Nebraska Department of Environmental Quality. As a result, the company was forced to incur the expense of paying for an investigation, which ultimately determined that no further action needed to be taken.

Eventually, Phillip, Rex, and Mary Lou, as managers of Roses and Wheat, voted to exclude George from a management

- 364 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

role in the company. Following his exclusion from Roses and Wheat's management, George undertook a number of unilateral actions to the company's detriment, including contacting the company's tenants regarding their leases and selling grain owned by the company without authorization. George also filed with the Counsel for Discipline of the Nebraska Supreme Court a complaint against the company's longtime attorney. The Counsel for Discipline found the complaint against the attorney to be unfounded and took no further action. Eventually, Mary Lou, acting as Phyllis' guardian, was granted a temporary restraining order preventing George from further interfering with Roses and Wheat's business.

The evidence at trial demonstrated that Phyllis was troubled by the discord between her children. For example, with respect to the dispute between George and Phillip over wages, Phyllis wrote to George in 2007, "Please George for your sake and my sake and our families please stop all actions that will lead to a life of long time consequences. . . . You and Phillip may not agree as to what happened but both need to forget and forgive so that life can go on peacefully." In an e-mail to all four of her children around the same time, Phyllis wrote, "Where did it all start, when did it start. Each one says the other is at fault so I wonder what it must be like to be in a family where they all get along. Heaven knows !!" Lastly, in a 2008 e-mail from Phyllis to George, Phyllis expressed her unhappiness at George's reporting the oil spill and urged him to withdraw the complaint, writing, "The philosophy . . . that this needed to be reported could result in bankruptcy."

In May 2010, Phyllis amended her trust for a fourth time. The fourth amendment stated:

Upon GRANTOR'S death and after the payment of taxes and expenses, the TRUSTEE shall manage and distribute the assets of this Trust as follows:

A. After my death, the Trustee shall distribute all of my membership interest in Roses and Wheat, L.L.C., to three of my four children, PHILLIP HABERMAN,

- 365 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

REX HABERMAN II, and MARY LOU HABERMAN, in amounts so that after the distribution of this Trust and [my spouse's trust], PHILLIP, REX, and MARY LOU's individual membership interests in Roses and Wheat, L.L.C., are equal.

B. After my death, the Trustee shall divide the remaining trust assets and distribute the same to three of my four children, PHILLIP HABERMAN, REX HABERMAN II, and MARY LOU HABERMAN, equally, share and share alike.

C. For reasons that are personal to me, I intentionally omit my son, GEORGE HABERMAN and his issue from this Trust. Unless this Trust is subsequently amended by me, neither GEORGE HABERMAN nor his issue shall receive any distributions from this Trust.

At trial, George contested the validity of the fourth amendment to the trust due to his mother's mental state. However, the county court determined that Phyllis was of sound mind and was not influenced by any other parties at the time she made the fourth amendment to the trust. On appeal, George no longer argues that the fourth amendment is invalid.

Phyllis passed away in May 2011 and was survived by her four children. Phillip, Rex, and Mary Lou filed a petition requesting instructions on how the trust assets should be distributed. George answered the petition and joined in the request for instructions, contending that the fourth amendment to the trust was invalid and that under the agreement among parties, he should receive a 25-percent interest in Roses and Wheat.

Following a 2-day trial, the county court determined that the trust should be distributed in accordance with the fourth amendment and that George was not entitled to a portion of the trust property. The court first determined that Phyllis possessed testamentary capacity and was not subject to undue influence at the time she made the fourth amendment. The court next found that the agreement among parties was invalid

- 366 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

because it was not signed by Phyllis personally, but, rather, by Mary Lou as Phyllis' guardian and conservator. The court also concluded that Phyllis retained and exercised her right to modify the trust and that enforcing the agreement to distribute the trust property in a manner other than that prescribed by the fourth amendment would be against public policy. Finally, the county court determined that George was also barred from recovery by the doctrine of unclean hands because he had interfered with Roses and Wheat's business.

George appeals.

## ASSIGNMENTS OF ERROR

George argues, restated, that the county court erred in (1) finding that the agreement among parties was not enforceable, (2) analyzing the agreement among parties as a trust amendment and not a separate contract, (3) finding the agreement among parties was void as against public policy, and (4) finding George was barred from relief by the doctrine of unclean hands.

## STANDARD OF REVIEW

[1] Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record. *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011).

## ANALYSIS

George's first three assignments of error relate to the agreement among parties. George argues that the agreement among parties constitutes a separate, enforceable contract that determines how the siblings are currently required to divide the trust corpus following Phyllis' death. George argues that, pursuant to the agreement among parties, he is entitled to a 25-percent interest in Roses and Wheat. We disagree that the agreement among parties controls and requires that George receive a 25-percent interest in the company. Regardless of

- 367 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

any previous agreements the beneficiaries may have made, Phyllis exercised her continued control over the trust when she amended it to remove George as a beneficiary. The fourth amendment, not the agreement among parties, therefore governs the disposition of the trust property, and George's assignments of error are without merit.

[2,3] Critical to our analysis is Neb. Rev. Stat. § 30-3855(a) (Cum. Supp. 2014). Under § 30-3855(a), while a trust is revocable, rights of the beneficiaries are subject to the control of the settlor. See *Manon v. Orr*, 289 Neb. 484, 856 N.W.2d 106 (2014). The settlor of a written revocable trust may revoke or amend the trust by substantial compliance with a method provided in the terms of the trust. Neb. Rev. Stat. § 30-3854(c)(1) (Reissue 2008).

Here, Phyllis exercised her control as settlor and amended her trust—for a fourth time—in May 2010. In compliance with the terms of the original trust, the fourth amendment was made in writing, was signed, and appears to have been delivered to the trustee. Accordingly, the fourth amendment substantially complied with the terms of the original trust and was therefore an effective means for Phyllis to modify the trust to remove George as a beneficiary. See § 30-3854(c)(1).

George argues that the agreement among parties constitutes an enforceable contract separate from the trust. As an initial matter, it is questionable whether the agreement among parties would have been enforceable at the time it was created, because the beneficiaries' property interests were speculative at that time. In *Manon v. Orr, supra*, the beneficiaries of a revocable trust sought to impose a constructive trust on trust assets the settlor had sold. The court characterized the plaintiffs as "contingent beneficiaries of the trust" who had "no real interest in the cause of action or a legal or equitable right, title, or interest in the subject matter of the controversy." *Id.* at 488, 856 N.W.2d at 109. The court concluded that such a "mere expectancy" was insufficient to confer standing on the beneficiaries. *Id.*

- 368 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

Similarly to the plaintiffs in *Manon*, the Haberman siblings were contingent beneficiaries of Phyllis' revocable trust at the time of the agreement among parties. Therefore, they possessed a "mere expectancy" and had no "equitable right, title, or interest" in the trust property which George contends they contracted to dispose of. See *id.*

It does not appear that Nebraska courts have addressed the question of whether contingent beneficiaries of a revocable trust can assign their expectancy interest in the trust corpus while the trust remains revocable. However, we need not decide whether the agreement among parties was a valid, enforceable contract at the time it was created, because the fourth amendment negated any prior property interest George may have had in the trust assets. Under § 30-3855(a), the rights of the beneficiaries of a revocable trust are subject to the continued control of the settlor. Phyllis exercised this control when she undertook the fourth amendment removing George as a beneficiary.

[4] Accordingly, regardless of the interest George held in the trust corpus prior to 2010, the fourth amendment unambiguously deprived George of any right to the property in question. Any earlier agreement George entered into with respect to his interest in the trust corpus was invalidated by the subsequent amendment to the trust terminating his interest in the trust property. See, e.g., *Sgambelluri v. Nelson*, 480 F.2d 619 (9th Cir. 1973) (holding that where son purported to assign expectancy interest in his father's estate to third party, assignment failed to mature into enforceable right when son inherited nothing from his father's estate).

[5] Although our reasoning differs from that of the county court, the trial court did not err in finding that George is not entitled to a portion of the trust corpus. Where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate

- 369 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
IN RE TRUST CREATED BY HABERMAN
Cite as 24 Neb. App. 359

court will affirm. *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006).

[6] Having determined that George is not entitled to any portion of the trust assets under the fourth amendment to the trust, we need not address whether George would also be barred from recovery by the doctrine of unclean hands. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *In re Interest of Hansen*, 281 Neb. 693, 798 N.W.2d 398 (2011).

## CONCLUSION

We conclude that Phyllis removed George as a trust beneficiary when she undertook the fourth amendment to the trust. Any prior interest George held in the trust corpus was terminated at that time. Accordingly, we affirm the holding of the county court that George is not entitled to any portion of the trust property.

AFFIRMED.